**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

MIRIAM S. MARTINEZ,
individually and on behalf of the classes
defined herein,

Plaintiff,

vs.

RESURGENCE FINANCIAL, LLC,

Defendant.

)
)
)
)
)
)
)
)
)
)
)
)

FILED: JUNE 19, 2008
08CV3519
JUDGE PALLMEYER
MAGISTRATE JUDGE MASON

TC

**COMPLAINT – CLASS ACTION**

**MATTERS COMMON TO MULTIPLE CLAIMS**

**INTRODUCTION**

1.     This action seeks redress for the conduct of defendant, a debt buyer, in filing falsified and fraudulent documents in collection lawsuits brought to collect purported debts which it claims to have purchased.

2.     In this action, plaintiff complains that such practice violates both the Fair Debt Collection Practices Act, 15 U.S.C. §1692e ("FDCPA"), the Illinois Collection Agency Act, 225 ILCS 425/1 et seq. ("ICAA"), and the Illinois Consumer Fraud Act, 815 ILCS 505/2.

**VENUE AND JURISDICTION**

3.     This Court has jurisdiction under 15 U.S.C. §1692k (FDCPA), 28 U.S.C. §1331, 28 U.S.C. §1337, and 28 U.S.C. §1367.

4.     Venue and personal jurisdiction in this District are proper because:

a.     Defendant's collection communications and activities impacted plaintiff within this District;

b.     Defendant does business and is headquartered within this District.

1

## PARTIES

5.     Plaintiff Miriam S. Martinez is an individual who resides in the Northern District of Illinois.

6.     Defendant Resurgence Financial, LLC is a limited liability company organized under Illinois law with its principal offices at 4100 Commercial Avenue, Northbrook, Illinois 60062.

7.     Defendant Resurgence Financial, LLC brings lawsuits trough employed legal staff who operate from its offices at 4100 Commercial Avenue, Northbrook, Illinois 60062. The conduct complained of occurred at that location..

8.     Defendant Resurgence Financial, LLC's registered agent and office are Nathan M. Grossman, 20 S. Clark, Suite 1650, Chicago, IL 60603.

9.     Defendant Resurgence Financial, LLC is engaged in the business of enforcing charged-off consumer debts allegedly purchased from others against consumers.  Such debts are often referred to as "zombie debts."  Eileen Ambrose, "Zombie Debt; Debt Can Come Back to Haunt You Years Later," The Baltimore Sun, May 6, 2007, p. 1C ("Zombie debt is just that - an old debt that won't die off. It may be passed from one debt buyer to another, for years, until one day consumers are startled to find a collector demanding payment.").

10.     On information and belief, based on industry reports, defendant Resurgence Financial, LLC pays almost nothing for the "rights" it acquires,  less than ten cents on the dollar on the average.

11.     On information and belief, because it pays so little, Resurgence Financial, LLC does not obtain any genuine documents relating to the debts it claims to purchase.

12.     Defendant Resurgence Financial, LLC has been the plaintiff in more than 500 Illinois lawsuits filed since January 1, 2008 and seeking to collect consumer debts.  It also files lawsuits in Indiana and Wisconsin.

13.     Defendant Resurgence Financial, LLC regularly uses the mails and

2

telephones to conduct its business.

14.     Because the purported obligations were originally owed to other entities and were charged off prior to its involvement with them, defendant Resurgence Financial, LLC is a "debt collector" as defined in the FDCPA.

15.     Resurgence Financial, LLC is also a "collection agency" as defined in the ICAA.

### FACTS RELATING TO PLAINTIFF

16.     On or about April 30, 2008, Resurgence Financial, LLC filed suit against plaintiff Miriam S. Martinez in the Circuit Court of Cook County to collect a purported debt incurred for personal, family or household purposes.  Resurgence Financial, LLC claimed to have purchased the debt, a Citibank South Dakota Dividend credit card that was charged off on January 19, 2006, and which would have become delinquent 180 days previously, or in July 2005.

17.     The standard form complaint represented that "[a] copy of the Agreement containing the terms and conditions governing the use of the credit card is attached hereto, made a part hereof, and marked as Exhibit B."

18.     The complaint and exhibits are attached as Appendix A.

19.     The purported contract is unsigned.  Resurgence alleged in the complaint that it became binding on the cardholder because "[t]hereafter," following receipt of the document "Defendant incurred charges by use of the credit card."

20.     The purported agreement is identical to that attached to the Barrera and Felton complaints described below, even though (a) it is impossible that a document with a copyright date of 2006 and revision dates of June 2006 and July 2006 could govern a credit card which went into default in July 2005 and (b) Martinez, Barrera and Felton had different types of Citibank credit cards.

21.     Because it paid so little for its "rights" that no genuine documentation was supplied, defendant Resurgence Financial, LLC embarked upon a scheme to fraudulently pass off

3

a false document as the agreement to which numerous debtors were parties.

22.    Plaintiff was damaged as a result, in that she was required to retain counsel who had to analyze and deal with fictitious and fraudulent documents.

23.    The filing of collection lawsuits is regularly picked up and reported by credit bureaus.

## OTHER EXAMPLES OF PRACTICE

### Dionisia Barrera

24.    On or about May 1, 2008, Resurgence Financial, LLC filed suit against Dionisia Barrera in the Circuit Court of Cook County to collect a purported debt incurred for personal, family or household purposes.  Resurgence Financial, LLC claimed to have purchased the debt, a Citibank South Dakota Classic credit card that was charged off on June 7, 2006 and which would have become delinquent 180 days previously, or in December 2005.

25.    The standard form complaint represented that "[a] copy of the Agreement containing the terms and conditions governing the use of the credit card is attached hereto, made a part hereof, and marked as Exhibit B."

26.    The complaint and exhibits are attached as Appendix B.

27.    Very close examination of the purported agreement reveals that it has revision dates of June 2006 and July 2006.

28.    The purported contract is unsigned.  Resurgence alleged in its complaint that it became binding on the cardholder because "[t]hereafter," following receipt of the document "Defendant incurred charges by use of the credit card."

29.    Based on the alleged charge-off and delinquency dates, no document sent later than December 2005 could possibly govern the consumer's relationship.

30.    The purported agreement is identical to that attached to the Martinez complaint, even though (a) it is impossible that a document with a copyright date of 2006 and revision dates of June 2006 and July 2006 could govern a credit card which went into default in

4

December 2005 and (b) Barrera had a different type of credit card than Martinez.

### Cheyenne Felton

31.     On or about May 3, 2008, Resurgence Financial, LLC filed suit against Cheyenne Felton in the Circuit Court of Cook County to collect a purported debt incurred for personal, family or household purposes.  Resurgence Financial, LLC claimed to have purchased the debt, a Citibank South Dakota Citidiamond Preferred credit card that was charged off on June 15, 2006 and which would have become delinquent 180 days previously, or in December 2005.

32.     The standard form complaint represented that "[a] copy of the Agreement containing the terms and conditions governing the use of the credit card is attached hereto, made a part hereof, and marked as Exhibit B."

33.     The complaint and exhibits are attached as <u>Appendix C</u>.

34.     The purported contract is unsigned.  Resurgence alleged in the complaint that it became binding on the cardholder because "[t]hereafter," following receipt of the document "Defendant incurred charges by use of the credit card."

35.     The purported agreement is identical to that attached to the Martinez and Barrera complaints, even though (a) it is impossible that a document with a copyright date of 2006 and revision dates of June 2006 and July 2006 could govern a credit card which went into default in December 2005 and (b) Felton had a different type of credit card than Martinez and Barrera.

### COUNT I – FDCPA – CLASS CLAIM

36.     Plaintiff incorporates paragraphs 1-35.

37.     Defendant thereby violated 15 U.S.C.  §§1692e, 1692e(2), and 1692e(10).

38.     Section 1692e provides:

**§ 1692e.         False or misleading representations [Section 807 of P.L.]**

**A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section: . . .**

5

   **(2)**    **The false representation of--**

      **(A)**    **the character, amount, or legal status of any debt; . . .**

   **(10)**    **The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer. . . .**

## CLASS ALLEGATIONS

39.    Plaintiff brings this claim on behalf of a class, pursuant to Fed.R.Civ.P. 23(a) and 23(b)(3). The class consists of (a) all individuals (b) against whom defendant Resurgence Financial, LLC filed a collection lawsuit (c) in Illinois, Indiana or Wisconsin (d) on or after a date one year prior to the filing of this action, and on or before a date 20 days after the filing of this action, (e) alleging a Citibank credit card debt charged off prior to July 1, 2006 (f) that had attached to it any purported Citibank credit card agreement with a date of 2006 or later.

40.    The class is so numerous that joinder of all members is not practicable.

41.    On information and belief, there are at least 40 individuals against whom defendant Resurgence Financial, LLC filed a collection lawsuit in Illinois, Indiana or Wisconsin, on or after a date one year prior to the filing of this action, and on or before a date 20 days after the filing of this action, alleging a Citibank credit card debt charged off prior to July 1, 2006, that had attached to it a purported Citibank credit card agreement with a date of 2006 or later.

42.    There are questions of law and fact common to the class members, which common questions predominate over any questions relating to individual class members. The predominant common questions are:

   a.    Whether defendant engages in a practice of filing fraudulent documents in lawsuits;

   b.    Whether such practice violates the FDCPA.

43.    Plaintiff's claim is typical of the claims of the class members. All are based on the same factual and legal theories.

44.    Plaintiff will fairly and adequately represent the class members. Plaintiff

6

has retained counsel experienced in class actions and FDCPA litigation.

45.     A class action is superior for the fair and efficient adjudication of this matter, in that:

    a.     Individual actions are not economically feasible;

    b.     Members of the class are likely to be unaware of their rights;

    c.     Congress intended class actions to be the principal enforcement mechanism under the FDCPA.

WHEREFORE, the Court should enter judgment in favor of plaintiff and the class and against defendant for the following relief:

    (1)     Statutory damages;

    (2)     Actual damages in favor of plaintiff and any class member that proves same;

    (3)     Attorney's fees, litigation expenses and costs of suit;

    (4)     Such other and further relief as is proper.

## COUNT II – ILLINOIS COLLECTION AGENCY ACT – CLASS CLAIM

46.     Plaintiff incorporates paragraphs 1-35.

47.     Defendant is a "collection agency" as defined in the Illinois Collection Agency Act, 225 ILCS 425/1 et seq.

48.     Section 425/3(d), as amended effective January 1, 2008, brings debt buyers within its purview by providing that "[a] person, association, partnership, corporation, or other legal entity acts as a collection agency when he or it ... [b]uys accounts, bills or other indebtedness and engages in collecting the same."

49.     Previously coverage was limited to a person who "[b]uys accounts, bills or other indebtedness with recourse and engages in collecting the same".

50.     By deleting "with recourse," the legislature intended to classify as a "collection agency" persons such as the defendant who buy charged-off debts for their own

7

account.

51.    Defendant violated the following provisions of 225 ILCS 425/9:

**. . . (20) Attempting or threatening to enforce a right or remedy with knowledge or reason to know that the right or remedy does not exist. . . .**

**(31) Engaging in dishonorable, unethical, or unprofessional conduct of a character likely to deceive, defraud, or harm the public.**

52.    A private right of action exists for violation of the ICAA.  <u>Sherman v. Field Clinic</u>, 74 Ill. App. 3d 21, 392 N.E.2d 154 (1st Dist. 1979).

## CLASS ALLEGATIONS

53.    Plaintiff brings this claim on behalf of a class, pursuant to Fed.R.Civ.P. 23(a) and 23(b)(3).  The class consists of (a) all individuals (b) against whom defendant Resurgence Financial, LLC filed a collection lawsuit (c) in Illinois (d) on or after January 1, 2008, and on or before a date 20 days after the filing of this action, (e) alleging a Citibank credit card debt charged off prior to July 1, 2006 (f) that had attached to it any purported Citibank credit card agreement with a date of 2006 or later.

54.    The class is so numerous that joinder of all members is not practicable.

55.    On information and belief, there are at least 40 individuals against whom defendant Resurgence Financial, LLC filed a collection lawsuit in Illinois, on or after January 1, 2008, and on or before a date 20 days after the filing of this action, alleging a Citibank credit card debt charged off prior to July 1, 2006 that had attached to it a purported Citibank credit card agreement with a date of 2006 or later.

56.    There are questions of law and fact common to the class members, which common questions predominate over any questions relating to individual class members.  The predominant common questions are:

    a.    Whether defendant engages in a practice of filing fraudulent documents in lawsuits;

    b.    Whether such practice violates the ICAA.

8

57.     Plaintiff's claim is typical of the claims of the class members.  All are based on the same factual and legal theories.

58.     Plaintiff will fairly and adequately represent the class members.  Plaintiff has retained counsel experienced in class actions and collection abuse litigation.

59.     A class action is superior for the fair and efficient adjudication of this matter, in that:

      a.     Individual actions are not economically feasible;

      b.     Members of the class are likely to be unaware of their rights;

WHEREFORE, plaintiff requests that the Court grant the following relief in favor of plaintiff and the class and against defendant:

      (1)     Compensatory, nominal and punitive damages;

      (2)     Costs;

      (3)     Such other and further relief as is appropriate.

## COUNT III – ILLINOIS CONSUMER FRAUD ACT – CLASS CLAIM

60.     Plaintiff incorporates paragraphs 1-35.

61.     Defendant's conduct as set forth above constitutes both unfair and deceptive acts and practices, in violation of §2 of the Illinois Consumer Fraud Act, 815 ILCS 505/2.

62.     Defendant engaged in such conduct in the course of trade and commerce.

63.     Defendant engaged in such conduct for the purpose of obtaining money from and injuring the credit of plaintiff and others.

64.     Plaintiff and the members of the class were damaged as a result.

## CLASS ALLEGATIONS

65.     Plaintiff brings this claim on behalf of a class, pursuant to Fed.R.Civ.P. 23(a) and 23(b)(3).  The class consists of (a) all individuals (b) against whom defendant Resurgence Financial, LLC filed a collection lawsuit (c) in Illinois (d) on or after July 1, 2006,

9

and on or before a date 20 days after the filing of this action, (e) alleging a Citibank credit card debt charged off prior to July 1, 2006 (f) that had attached to it any purported Citibank credit card agreement with a date of 2006 or later.

66.    The class is so numerous that joinder of all members is not practicable.

67.    On information and belief, there are at least 40 individuals against whom defendant Resurgence Financial, LLC filed a collection lawsuit in Illinois, on or after July 1, 2006, and on or before a date 20 days after the filing of this action, alleging a Citibank credit card debt charged off prior to July 1, 2006 that had attached to it a purported Citibank credit card agreement with a date of 2006 or later.

68.    There are questions of law and fact common to the class members, which common questions predominate over any questions relating to individual class members. The predominant common questions are:

a.    Whether defendant engages in a practice of filing fraudulent documents in lawsuits;

b.    Whether such practice violates the Illinois Consumer Fraud Act.

69.    Plaintiff's claim is typical of the claims of the class members. All are based on the same factual and legal theories.

70.    Plaintiff will fairly and adequately represent the class members. Plaintiff has retained counsel experienced in class actions and collection abuse litigation.

71.    A class action is superior for the fair and efficient adjudication of this matter, in that:

a.    Individual actions are not economically feasible;

b.    Members of the class are likely to be unaware of their rights.

WHEREFORE, plaintiff requests that the Court enter judgment in favor of plaintiff and the class and against defendant for:

(1)    Actual damages in favor of plaintiff and any class member

that proves same;

      (2)      Nominal damages;

      (3)      Punitive damages;

      (4)      An injunction against further violations;

      (5)      Attorney's fees, litigation expenses and costs of suit;

      (6)      Such other or further relief as the Court deems proper.

## COUNT IV – FDCPA – INDIVIDUAL CLAIM

72.     Plaintiff incorporates paragraphs 1-36.

73.     There is a substantial problem with debt buyers suing on debts that they do not own and have no right to sue on.

74.     There are multiple reported cases in which debtors have been subjected to litigation because they "settled" with A and then B claimed to own the debt.  Smith v. Mallick, 514 F.3d 48 (D.C. Cir. 2008) (commercial debt purchased and resold by debt buyer, debt buyer [possibly fraudulently] settles debt it no longer owns, settlement held binding because notice of assignment not given, but obligor subjected to litigation as result).  See also, Miller v. Wolpoff & Abramson, LLP, 1:06-CV-207-TS, 2008 U.S. Dist. LEXIS 12283 (N.D. Ind., Feb. 19, 2008), where a debtor complained he had been sued twice on the same debt; Dornhecker v. Ameritech Corp., 99 F. Supp. 2d 918, 923 (N.D. Ill. 2000), where the debtor claimed he settled with one agency and was then dunned by a second for the same debt, and Northwest Diversified, Inc. v. Desai, 353 Ill.App.3d 378, 818 N.E.2d 753 (1st Dist. 2004), where a commercial debtor paid the creditor only to be subjected to a levy by a purported debt buyer.

75.     In Wood v. M&J Recovery LLC, CV 05-5564, 2007 U.S. Dist. LEXIS 24157 (E.D. N.Y., Apr. 2, 2007), a debtor complained of multiple collection efforts by various debt buyers and collectors on the same debt, and the defendants asserted claims against one another disputing the ownership of the portfolio involved.  Shekinah alleged that it sold a

portfolio to NLRS, that NLRS was unable to pay, that the sale agreement was modified so that NLRS would only obtain 1/5 of the portfolio, and that the 1/5 did not include the plaintiff's debt. Portfolio claimed that it and not Shekinah is the rightful owner of the portfolio.

76.    In Associates Financial Services Co. v. Bowman, Heintz, Boscia & Vician, P.C., IP 99-1725-C-M/S, 2001 U.S. Dist. LEXIS 7874, *9-12 (S.D. Ind., Apr. 25, 2001), later opinion, 2004 U.S. Dist. LEXIS 6520 (S.D. Ind., Mar. 31, 2004), allegations were made that a creditor had continued to collect accounts allegedly sold to a debt buyer.

77.    An article that appeared in the trade press shortly before the extension of the Illinois Collection Agency Act to debt buyers stated:

> More collection agencies are turning to the debt resale market as a place to pick up accounts to collect on. Too small to buy portfolios directly from major credit issuers, they look to the secondary market where portfolios are resold in smaller chunks that they can handle.
>
> But what they sometimes find in the secondary market are horror stories: The same portfolio is sold to multiple buyers; the seller doesn't actually own the portfolio put up for sale; half the accounts are out of statute; accounts are rife with erroneous information; access to documentation is limited or nonexistent....

Corinna C. Petry, Do Your Homework; Dangers often lay hidden in secondary market debt portfolio offerings. Here are lessons from the market pros that novices can use to avoid nasty surprises, Collections & Credit Risk, March 2007, pg. 24, Vol. 12, No. 3.  The article quoted an officer of an Illinois debt buyer who had purchased, or ostensibly purchased, bad paper.

78.    Courts have also dismissed numerous collection and foreclosure lawsuits filed in the names of entities that did not own the purported debts.  In re Foreclosure Cases, 1:07CV2282 and 14 others, 2007 U.S. Dist. LEXIS 84011, 2007 WL 3232430 (N.D. Ohio, Oct. 31, 2007); In re Foreclosure Cases, 07-cv-166 and 18 others, 2007 U.S. Dist. LEXIS 90812 (S.D. Ohio, Nov. 27, 2007); In re Foreclosure Cases, 521 F. Supp. 2d 650 (S.D. Ohio 2007); In re Foreclosure Cases, 07-cv-166 and 14 others, 2007 U.S. Dist. LEXIS 95673 (S.D. Ohio, Dec. 27, 2007); NovaStar Mortgage, Inc.  v. Riley, 3:07-CV-397, 2007 U.S. Dist. LEXIS 86216 (S.D.Ohio, Nov. 21, 2007); NovaStar Mortgage, Inc. v. Grooms, 3:07-CV-395, 2007 U.S. Dist.

LEXIS 86214 (S.D. Ohio, Nov. 21, 2007); HSBC Bank USA v. Rayford, 3:07-CV-428, 2007 U.S.

Dist. LEXIS 86215 (S.D. Ohio, Nov. 21, 2007); Everhome Mtge. Co. v. Rowland, 2008 Ohio

1282; 2008 Ohio App. LEXIS 1103 (Ohio App., Mar. 20, 2008) (judgment for plaintiff reversed

because it failed to introduce assignment or establish that it was the holder of the note and

mortgage); Deutsche Bank National Trust Co. v. Castellanos, 277/07, 2008 NY Slip Op 50033U;

18 Misc. 3d 1115A; 2008 N.Y. Misc. LEXIS 44; 239 N.Y.L.J. 16 (Kings Co., N.Y., Sup. Ct.,

Jan. 14, 2008); HSBC Bank USA, N.A. v. Valentin, 15968/07, 2008 NY Slip Op 50164U; 14

Misc. 3d 1123A; 2008 N.Y. Misc. LEXIS 229 (Kings Co., N.Y., Sup. Ct., Jan. 30, 2008); HSBC

Bank USA, N.A. v. Cherry, 21335/07, 2007 NY Slip Op 52378U; 18 Misc. 3d 1102A; 2007 N.Y.

Misc. LEXIS 8279; 239 N.Y.L.J. 2 (Kings Co., N.Y. Sup. Ct., Dec. 17, 2007); Deutsche Bank

National Trust Co. v. Castellanos, 15 Misc. 3d 1134A; 841 N.Y.S.2d 819 (Kings. Co., N.Y. Sup.

Ct. 2007).

      79.    Debt buyer American Acceptance filed a lawsuit alleging that a broker of

charged-off debts sold it debts to which it did not have title. American Acceptance Co. v.

Goldberg, 2:08cv9 (N.D. Ind.). Another debt buyer, Hudson & Keyse, filed suit alleging that the

same debt broker obtained information about consumer debts owned by Hudson & Keyse and

used the information to try to collect the debts for its own account, even though it didn't own

them. Hudson & Keyse, LLC v. Goldberg & Associates, LLC, 07-81047-civ (S.D. Fla., filed

Nov. 5, 2007). A similar suit, alleging that the broker resold accounts it did not own, was filed by

Old National Bank, Old National Bank v. Goldberg & Associates, 9:08-cv-80078-DMM

(S.D.Fla., Jan. 24, 2008). The same debt broker is accused in another complaint of selling 6,521

accounts totaling about $40 million face value which it did not own. RMB Holdings, LLC v.

Goldberg & Associates, LLC, 3:07-cv-00406 (E.D. Tenn., filed Oct. 29, 2007). Other debt

buyers have voiced similar complaints. "Florida Broker Faces Multiple Lawsuits," Collections &

Credit Risk, April 2008, p. 8.

      80.    In order to protect Illinois residents against this sort of abuse, the Illinois

Collection Agency Act ("ICAA") was amended effective January 1, 2008 to define debt buyers as

"collection agencies." This makes applicable the special assignment requirements in ICAA §8b,

225 ILCS 425/8b. Illinois courts had held prior to the amendment that a party that was required

to but did not have such an assignment does not have a valid claim and that the defendant in such

a case is entitled to judgment. Business Service Bureau, Inc. v. Webster, 298 Ill. App. 3d 257;

698 N.E.2d 702 (4th Dist. 1998).

    81.    Section 8b of the ICAA provides:

> **Sec. 8b. An account may be assigned to a collection agency for collection with title passing to the collection agency to enable collection of the account in the agency's name as assignee for the creditor provided:**
>
> > **(a) The assignment is manifested by a written agreement, separate from and in addition to any document intended for the purpose of listing a debt with a collection agency. The document manifesting the assignment shall specifically state and include:**
> >
> > > **(i) the effective date of the assignment; and**
> > >
> > > **(ii) the consideration for the assignment.**
> >
> > **(b) The consideration for the assignment may be paid or given either before or after the effective date of the assignment. The consideration may be contingent upon the settlement or outcome of litigation and if the claim being assigned has been listed with the collection agency as an account for collection, the consideration for assignment may be the same as the fee for collection.**
> >
> > **(c) All assignments shall be voluntary and properly executed and acknowledged by the corporate authority or individual transferring title to the collection agency before any action can be taken in the name of the collection agency.**
> >
> > **(d) No assignment shall be required by any agreement to list a debt with a collection agency as an account for collection.**
> >
> > **(e) No litigation shall commence in the name of the licensee as plaintiff unless: (i) there is an assignment of the account that satisfies the requirements of this Section and (ii) the licensee is represented by a licensed attorney at law. . . .**

    82.    Furthermore, the assignment must be attached to the complaint. Candice

Co. v. Ricketts, 281 Ill.App.3d 359, 362, 666 N.E.2d 722 (1st Dist. 1996).

    83.    Finally, the assignee is required "in his or her pleading on oath allege that

he or she is the actual bona fide owner thereof, and set forth how and when he or she acquired title...." 735 ILCS 5/2-403(a).

84.    Defendant Resurgence Financial, LLC, a debt buyer regulated by the ICAA since January 1, 2008, systematically files collection lawsuits without compliance with ICAA §8b and, therefore, without valid claims.

85.    The complaint filed against plaintiff did not attach an assignment that complied with §8b of the Collection Agency Act.  On information and belief, defendant did not have any such assignment.

86.    Defendant therefore did not have any sort of valid claim and knew or should have known that it did not have a valid claim.

87.    The filing and prosecution of collection lawsuits notwithstanding a known defense, in the hope that the consumer will not raise the defense, is both a deceptive collection practice, in violation of 15 U.S.C. §§1692e, 1692e(2), 1692e(5), and 1692e(10), and an unfair collection practice, in violation of 15 U.S.C. §1692f.

88.    Since Kimber v. Federal Financial Corp., 668 F. Supp. 1480, 1488  (M.D. Ala. 1987), "bringing a lawsuit to which there appears to exist a complete defense" in the hope that the consumer will not realize it exists and will default or pay has been a violation of the FDCPA.

89.    In addition, by filing suit defendant misrepresents that it has proper title to the debt and the right to file suit, when this is not true.

90.    Section 1692e provides:

> **§ 1692e.        False or misleading representations [Section 807 of P.L.]**
>
> **A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section: . . .**
>
> **(2)    The false representation of--**
>
> **(A)    the character, amount, or legal status of any debt; . . .**

15

**(5)    The threat to take any action that cannot legally be taken or that is not intended to be taken. . . .**

**(10)    The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer. . . .**

91.    Section 1692f provides:

**§ 1692f.    Unfair practices [Section 808 of P.L.]**

**A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt. . . .**

WHEREFORE, the Court should enter judgment in favor of plaintiff and against defendant for:

(1)    Statutory damages;

(2)    Actual damages;

(3)    Attorney's fees, litigation expenses and costs of suit;

(4)    Such other and further relief as the Court deems proper.

## COUNT V – ILLINOIS COLLECTION AGENCY ACT

92.    Plaintiff incorporates paragraphs 1-36 and 74-87.

93.    Defendant violated 225 ILCS 425/8b by filing suit without an assignment in the form specified therein.

94.    Defendant negligently or knowingly violated the following provisions of 225 ILCS 425/9:

**. . .(20) Attempting or threatening to enforce a right or remedy with knowledge or reason to know that the right or remedy does not exist.  . . .**

95.    A private right of action exists for violation of the ICAA.  Sherman v. Field Clinic, 74 Ill. App. 3d 21, 392 N.E.2d 154 (1st Dist. 1979).

96.    Plaintiff was damaged as a result.

WHEREFORE, plaintiff requests that the Court grant the following relief in favor of plaintiff and the class and against defendant:

16

a.    Compensatory, punitive and nominal damages, as appropriate;

b.    Costs.

c.    Such other and further relief as is appropriate.

_____
Daniel A. Edelman

Daniel A. Edelman
Cathleen M. Combs
James O. Latturner
Cassandra P. Miller
EDELMAN, COMBS, LATTURNER & GOODWIN, LLC
120 S. LaSalle Street, Suite 1800
Chicago, Illinois 60603
(312) 739-4200
(312) 419-0379 (FAX)

**JURY DEMAND**

Plaintiff demands trial by jury.

_____
Daniel A. Edelman

17

## NOTICE OF LIEN AND ASSIGNMENT

Please be advised that we claim a lien upon any recovery herein for 1/3 or such amount as a court awards.  All rights relating to attorney's fees have been assigned to counsel.

_____
Daniel A. Edelman

Daniel A. Edelman
EDELMAN, COMBS, LATTURNER & GOODWIN, LLC
120 S. LaSalle Street, Suite 1800
Chicago, Illinois  60603
(312) 739-4200
(312) 419-0379 (FAX)

08CV3519
JUDGE PALLMEYER
MAGISTRATE JUDGE MASON

TC

# APPENDIX A

R0060494

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
FIRST MUNICIPAL DISTRICT

RESURGENCE FINANCIAL, LLC, an Illinois )
Limited Liability Company )
                                      ) **08M1   135403**
        Plaintiff )
                                        ) Amount Claimed: $4,375.41
                                        )
        v. )  Return Date:
                                        )
MIRIAM S MARTINEZ )  **JUN   9 2008**
        Defendant(s). )
                                        )
                                        )
                                        )
                                        )

## VERIFIED COMPLAINT AT LAW

RESURGENCE FINANCIAL, LLC, an Illinois Limited Liability Company ("Plaintiff"), by and through one of

its staff attorneys, complains of MIRIAM S MARTINEZ ("Defendant"), as follows:

1.      Pursuant to 735 ILCS 5/2-403, Plaintiff is proceeding in this cause as the Assignee of CITIBANK SOUTH

DAKOTA NA / DIVIDEND ("CITIBANK SOUTH DAKOTA NA / DIVIDEND"), as set forth in the Bill of Sale

attached hereto, made a part hereof and marked as Exhibit "A".

2.      CITIBANK SOUTH DAKOTA NA / DIVIDEND and Defendant entered into a Cardmember Agreement

("Agreement"), wherein CITIBANK SOUTH DAKOTA NA / DIVIDEND issued a credit card account number

▮▮▮▮▮▮▮▮▮6516 to Defendant and Defendant agreed to pay all amounts charged by the use if the card. A copy of the

Agreement containing the terms and conditions governing the use of the credit card is attached hereto, made a part here

of and marked as Exhibit "B".

3.      Defendant resides in the State of Illinois.

4.      Thereafter, Defendant incurred charges by use of the credit card.

5.      As set forth in the Affidavit of Plaintiff, attached hereto, made a part hereof and marked as Exhibit "C", there

is now due and owing from Defendant to Plaintiff the sum of $4,375.41, of which no part has been paid, although duly

demanded.

WHEREFORE, Plaintiff, Resurgence Financial, LLC, an Illinois Limited Liability Company, demands a judgment against the Defendant(s) MIRIAM S MARTINEZ, in the sum of $4,375.41, plus court costs.

Respectfully Submitted,

RESURGENCE FINANCIAL, LLC,
an Illinois Limited Liability Company,
Plaintiff herein,

By One of Its Staff Attorneys

VERIFICATION            ARAVIND RAGHU. ESQ.

Under penalties as provided by law pursuant to Section 1-109 of the Code of Civil Procedure, the undersigned certifies that the statements set forth in this instrument are true and correct, except as to matters therein stated to be on information an belief, and as to such matters the undersigned certifies as aforesaid that s/he verily believes the same to be true.

RESURGENCE FINANCIAL, LLC
By One of Its Attorneys

ARAVIND RAGHU. ESQ.

RESURGENCE FINANCIAL, LLC
Legal Department
4100 Commercial Avenue
Northbrook, IL 60062
847/656-2200
Firm No. 41776

EXHIBIT "A"

## BILL OF SALE, ASSIGNMENT AND ASSUMPTION AGREEMENT

THIS BILL OF SALE, ASSIGNMENT AND ASSUMPTION AGREEMENT is dated as of November 29, 2007, between Citibank (South Dakota), N.A., a national banking association organized under the laws of the United States, located at 701 East 60th Street North, Sioux Falls, SD 57117 (the "Bank") and Unifund Portfolio A, LLC ("Buyer"), with its headquarters/principal place of business at 10625 Techwoods Circle, Cincinnati, OH 45242.

For value received and subject to the terms and conditions of the Purchase and Sale Agreement dated November 29, 2007, between Buyer and the Bank (the "Agreement"), the Bank does hereby transfer, sell, assign, convey, grant, bargain, set over and deliver to Buyer, and to Buyer's successors and assigns, all of the Bank's right, title and interest in and to the Accounts described in Section 1.2 of the Agreement.

Except as provided for in the Agreement, this Bill of Sale, Assignment and Assumption Agreement is executed without recourse and without representations or warranties including, without limitation, warranties as to collectibility.


Citibank (South Dakota), N.A.

By: _____
        (Signature)

Name: Douglas C. Morrison

Title: Vice President & CFO


Unifund Portfolio A, LLC

By: _____
        (Signature)

Name: Henry N. Thomas

Title: Vice President



Unifund CCR Partners

BILL OF SALE

Unifund CCR Partners, for value received and in accordance with the terms of the Accounts Receivable Purchase Agreement by and among Unifund CCR Partners and Resurgence Financial, LLC ("Purchaser"), dated as of March 4th, 2008 (the "Agreement"), does hereby sell, assign, and transfer to Purchaser all of its good and marketable title, free and clean of all liens, claims and encumbrances in and to the Accounts listed in the Account Schedule attached as Appendix A to the Agreement, without recourse and without representation or warranty of collectibility, or otherwise, except to the extent stated in the Agreement.

Executed on March 4th, 2008.

UNIFUND CCR PARTNERS

By
Joel Rosenthal
Director, Sales and Marketing

23

**AFFIDAVIT**

I, Joel Rosenthal, as Director of Sales and Marketing, for the Unifund Group, being duly sworn, deposes, and says:

1. Unifund CCR Partners is a New York General Partnership, and is the operating company for the Unifund Group.

2. Unifund Portfolio A, LLC is an Ohio limited liability company.

3. Unifund CCR Partners and Unifund Portfolio A, LLC share 100% common ownership.

4. Unifund Portfolio A, LLC purchased various portfolios of accounts from multiple sellers.

5. In accordance with a Servicing Agreement between Unifund CCR Partners and Unifund Portfolio A, LLC dated July 6, 2001; Unifund CCR Partners has the right and authority to sell accounts on behalf of Unifund Portfolio A, LLC.

6. Pursuant to such right and authority, Unifund CCR Partners sold a portfolio of 1897 accounts to Resurgence Financial, LLC via a Purchase Agreement and Bill of Sale dated March 10, 2008, on behalf of Unifund Portfolio A, LLC.

**Further Affiant Sayeth Not.**

Joel Rosenthal
Director of Sales and Marketing
Unifund CCR Partners

I do certify that the above sworn statement was duly taken and subscribed in my presence, this 17th day of March, 2007.

Notary Public

JENNIFER A DUNCAN
NOTARY PUBLIC
STATE OF OHIO
Comm. Expires
July 04, 2012

# EXHIBIT "B"

# CARD AGREEMENT

This Card Agreement, which includes your card carrier, is your contract with us and governs the use of your card and account. The card carrier contains important account information, including your annual percentage rates and the amount of any membership fees. Please read and keep these documents for your records.

### FACTS ABOUT RATES AND FEES

For complete information about these facts, please see the related sections in this Card Agreement.

### RATES—FINANCE CHARGES

**Purchase and Cash Advance APRs:** See card carrier. All APRs based on the Prime Rate may vary each billing period.

**Default APR:** See card carrier. The Default APR equals the Prime Rate plus up to 23.99%, or up to 28.99%, whichever is greater. All APRs may automatically increase up to the Default APR if you fail to make a payment to us when due, exceed your credit line, or make a payment to us that is not honored.

**Minimum Finance Charge:** $0.50.

### TRANSACTION FEES—FINANCE CHARGES

**Balance Transfer Fee:** 3% of each balance transfer, $5 minimum, $75 maximum.

**Purchases Made in a Foreign Currency Fee:** 3% of each purchase after its conversion into U.S. dollars.

**Cash Advance Fee:** 3% of each cash advance, $5 minimum.

### OTHER FEES

**Late Fee:** $15 on balances up to $100; $29 on balances of $100 up to $250; $39 on balances of $250 and over.

**Over-the-Credit-Line Fee:** $39.

**Annual Membership Fee:** See card carrier.

**Returned Payment Fee:** $39.

**Returned Convenience Check Fee:** $39.

**Stop Payment on Convenience Check Fee:** $39.

**Rates, fees, and terms may change:** We may change the rates, fees, and terms of your account at any time for any reason. These reasons may be based on information in your credit report, such as your failure to make payments to another creditor when due, amounts owed to other creditors, the number of credit accounts outstanding, or the number of credit inquiries. These reasons may also include competitive or market-related factors. If we make a change for any of these reasons, you will receive advance notice and a right to opt out in accordance with applicable law.

## Definitions

*account:* the relationship established between you and us by this Card Agreement.

*APR:* annual percentage rate.

*authorized user:* any person you allow to use your account.

*card:* one or more cards or other account access devices, including account numbers, that we issue to you to obtain credit under this Card Agreement.

*Card Agreement (or Agreement):* this document and the card carrier.

*we, us, and our:* Citibank (South Dakota), N.A., the issuer of your account.

*you, your, and yours:* the person who applied to open the account and any other person responsible for complying with this Agreement, including the person to whom we address billing statements.

## Your Account

You agree to use your account in accordance with this Agreement. This Agreement is binding on you unless you cancel your account within 30 days after receiving the card, and you have not used or authorized use of the card. You must pay us for all amounts due on your account as specified in this Agreement. Your account must only be used for lawful transactions.

**Authorized Users:** You may allow authorized users to use your account. You may request additional cards for authorized users. You must pay us for all charges made by authorized users even if you did not intend to be responsible for those charges. You must notify us to revoke any permission you give to an authorized user to use a card or to use your account.

**Credit Line:** Your initial credit line appears on the card carrier. The full amount of your credit line is available to buy or lease goods or services where the card is honored. Part of your credit line, called the cash advance limit, is available for cash advances. We may change your credit line or cash advance limit at any time for any reason. We will notify you of any change, but the change may take effect before you receive the notice. The total balance on your account, including periodic finance charges and fees, must always remain below the credit line. However, if the total balance exceeds your credit line you must still pay us. If your account has a credit balance, we may reduce the credit balance by any new charges on your account. You may not maintain a credit balance in excess of your credit line.

**Billing Statement:** Your billing statement shows the total balance, periodic finance charges, fees, minimum amount

due, and payment due date. It also shows your current credit line and cash advance limit; an itemized list of current charges, payments and credits; a rate summary; and other important information. We deliver a statement to only one address. You must notify Customer Service of a change in address. If we deem your account uncollectible or institute collection proceedings by sending it to an outside agency or attorney for collection, we may stop sending you statements. Periodic finance charges and fees continue to accrue even if we stop sending statements.

The total amount you owe us appears as the New Balance on the billing statement. To determine the New Balance we begin with the total balance at the start of the billing period. We add any purchases and cash advances and subtract any credits or payments credited as of that billing period. We then add any periodic finance charges or fees and make other adjustments.

## APRs

**APRs Based on Prime:** We calculate any APR based on the U.S. Prime Rate ("Prime Rate") by adding the applicable amount that appears on the card carrier to the Prime Rate. For each billing period we use the Prime Rate published in *The Wall Street Journal* two business days prior to the Statement/Closing Date for that billing period. If *The Wall Street Journal* does not publish the Prime Rate, we may substitute a similar published rate. A change in an APR due to a change in the Prime Rate takes effect as of the first day of the billing period for which we calculate the APR. We apply the new applicable APR to any existing balances, subject to any promotional rate that may apply.

**Default Rate:** All your APRs may increase if you default under any Card Agreement that you have with us because you fail to make a payment to us when due, you exceed your credit line, or you make a payment to us that is not honored. In these circumstances, we may automatically increase your APRs (including any promotional APRs) on all balances to the Default APR, which equals the Prime Rate plus up to 23.99%, or up to 28.99%, whichever is greater. Factors considered in determining your Default APR may include how long your account has been open, the timing or seriousness of a default under any Card Agreement that you have with us, or other indications of account performance. The Default APR takes effect as of the first day of the billing period in which you default. We may lower the APR for new purchases and/or cash advances if you meet the terms of all Card Agreements that you have with us for six consecutive billing periods. Existing balances remain subject to the Default APR until paid in full, unless we tell you otherwise.

2

3

**Effect of APR Increases:** If an APR increases, periodic finance charges increase and your minimum payment may increase.

## Periodic Finance Charges Based On APRs

**Periodic Finance Charges:** Periodic finance charges are finance charges that are added to your account when we apply the applicable APR to the balances on your account. We calculate periodic finance charges separately for each balance subject to different terms, for example, standard purchases, standard cash advances, and each promotional offer. The total periodic finance charge for the billing period equals the daily periodic finance charges for each balance for each day in the billing period. This method of calculating periodic finance charges results in daily compounding of finance charges.

**When Periodic Finance Charges Begin to Accrue:** Periodic finance charges begin to accrue on a charge from the date it is added to the daily balance and continue to accrue until payment in full is credited to your account. (Charges include purchases, balance transfers, cash advances, transaction fees, other fees, and any minimum finance charge.) You can avoid periodic finance charges on purchases (excluding balance transfers) that appear on your current billing statement if you paid the New Balance on that statement and you pay your New Balance by the payment due date on your current statement. If you made a balance transfer, you may be unable to avoid periodic finance charges on new purchases, as described in the balance transfer offer.

**Calculation of Periodic Finance Charges:**
- For each balance, we multiply the daily balance by the applicable daily periodic rate. We do this for each day in the billing period. A daily periodic rate is the applicable APR divided by 365. A billing period begins on the day after the Statement/Closing Date of the previous billing period and includes the Statement/Closing Date of the current billing period.
- To get the daily balance, we take the beginning balance for each balance every day (including unpaid periodic finance charges from previous billing periods), add any new charges, and any periodic finance charge on the previous day's balance, subtract any credits or payments credited as of that day, and make other adjustments. A credit balance is treated as a balance of zero.
- We add a charge to the daily balance as follows: We add a purchase to the appropriate balance as of the Sale Date on the billing statement. We add a balance transfer or cash advance to the appropriate balance as of the Post Date on the statement. We add any transaction fees for purchases,

balance transfers, or cash advances to the same balance as the transaction as of the same date the transaction is added to the daily balance. The Post Date is the date we receive your request for the balance transfer or cash advance, including a request that we complete a balance transfer or cash advance convenience check for a specific amount. If you send a balance transfer or convenience check directly to someone, the Post Date is the date we receive the check for payment.
- To get the total periodic finance charges, we add up all of the daily periodic finance charges for each balance for each day in the billing period.
- For each balance, the Balance Subject to Finance Charge on the statement is the average of the daily balances during the billing period. If you multiply this figure for each balance by the number of days in the billing period and by the applicable daily periodic rate, the result is the periodic finance charges assessed for that balance, except for minor variations caused by rounding.

**Minimum Finance Charge:** If the periodic rate finance charge would otherwise be less than $0.50, we assess a minimum FINANCE CHARGE of $0.50. We add the amount to any balance that is assessed a finance charge.

## Transaction Fees

**Transaction Fees and APRs:** If you are assessed a transaction fee for a balance transfer, a purchase made in a foreign currency, or a cash advance, the transaction fee will cause the APR on the billing statement on which the transaction first appears to exceed your nominal APR.

**Transaction Fee for Balance Transfers:** You obtain a balance transfer if you obtain funds through a balance transfer check or transfer a balance without using a cash advance convenience check. We treat balance transfers as purchases unless otherwise provided in this Agreement. For each balance transfer we add an additional FINANCE CHARGE of 3% of the amount of the balance transfer, but not less than $5 or more than $75.

**Transaction Fee for Purchases Made in a Foreign Currency:** For each purchase made in a foreign currency we add an additional FINANCE CHARGE of 3% of the purchase amount after its conversion into U.S. dollars.

**Transaction Fee for Cash Advances:** You obtain a cash advance if you obtain funds through an automated teller machine (ATM), convenience check, home banking, or financial institution; make a wire transfer; obtain a money order, traveler's check, lottery ticket, casino chip, or similar item; or engage in a similar transaction. For each cash

4

5

advance we add an additional **FINANCE CHARGE** of 3% of the amount of the cash advance, but not less than $5.

## Other Fees

**Late Fee:** We add a late fee to the standard purchase balance for each billing period you fail to pay, by its due date, the Minimum Amount Due (less the Amount Over Credit Line shown on your billing statement). This fee is based on your account balance as of the payment due date. It is: $15 on balances up to $100, $29 on balances of $100 up to $250, and $39 on balances of $250 and over.

**Over-the-Credit-Line Fee:** We add a $39 fee to the standard purchase balance if your account balance exceeds your credit line at any time during the billing period. We add this fee even if transactions we authorize or periodic finance charges, fees, and other charges you incur are a reason the account balance exceeds your credit line. We add this fee even if the account balance falls below your credit line by the end of the billing period.

**Annual Membership Fee:** We add any applicable annual membership fee to the standard purchase balance. This fee is non-refundable unless you notify us to cancel your account within 30 days of the mailing or delivery date of the billing statement on which the fee is billed.

**Returned Payment Fee:** We add a $39 fee to the standard purchase balance if a payment check or similar instrument is not honored or is returned because it cannot be processed, or if an automatic debit is returned unpaid. We assess this fee the first time your check or payment is not honored, even if it is honored upon resubmission.

**Returned Convenience Check Fee:** We add a $39 fee to the standard advance balance if we decline to honor a convenience check. We may decline to honor these checks if, for example, the amount of the check would cause the balance to exceed the cash advance limit or credit line, if you default, if you did not comply with our instructions regarding the check, or if your account has been closed.

**Stop Payment on Convenience Check Fee:** We add a $39 fee to the standard advance balance if we honor your request to stop payment on a convenience check. To stop payment on a convenience check write us at P.O. Box 6500, Sioux Falls, South Dakota 57117, or call the Customer Service number on the billing statement. If you call, you must confirm the call in writing within 14 days. A written stop payment order remains in effect for 6 months unless renewed in writing.

**Balance Transfer Checks and Convenience Checks:** Each check must be in the form it was issued and used according to any instructions we give. The checks must not be used to pay an amount owed us under this or another Card Agreement that you have with us. We do not certify these checks or return any such checks that have been paid.

## Information on Foreign Currency Conversion Procedures

If you make a transaction in a foreign currency, other than a cash advance made at a branch or ATM of one of our affiliates, MasterCard, Visa or American Express, depending on which card is used, converts the amount into U.S. dollars as follows:

- MasterCard complies with its foreign currency conversion procedures then in effect. MasterCard currently uses a conversion rate in effect one day prior to its transaction processing date. Such rate is either a wholesale market rate or the government-mandated rate.
- Visa complies with its foreign currency conversion procedures then in effect. Visa currently uses a conversion rate in effect on its applicable central processing date. Such rate is either a rate it selects from the range of rates available in wholesale currency markets, which may vary from the rate it receives, or the government-mandated rate.
- American Express complies with its foreign currency conversion procedures then in effect. Unless a particular rate is required by applicable law, the rate used by American Express shall be the highest interbank rate selected on the business day prior to the day on which the transaction is processed by American Express.

If a cash advance is made in a foreign currency at a branch or ATM of one of our affiliates, the amount is converted into U.S. dollars by our affiliate in accordance with its foreign currency conversion procedures then in effect. Our affiliate currently uses a conversion rate in effect on its applicable processing date. Such rate is either a mid-point market rate or the government-mandated rate.

The foreign currency conversion rate in effect on the applicable processing date for a transaction may differ from the rate in effect on the Sale or Post date on your billing statement for that transaction.

If a transaction is converted by a third party prior to such transaction being processed by MasterCard, Visa, or American Express, the foreign currency conversion rate for that transaction will be the rate selected by that third party.

## Payments

**Minimum Amount Due:** Each month you must pay at least the Minimum Amount Due by the payment due date. The

sooner you pay the New Balance, the less you will pay in periodic finance charges.

To calculate the Minimum Amount Due, we begin with any past due amount and add any amount in excess of your credit line. We then add the largest of the following:

- The New Balance on the billing statement if it is less than $20;
- $20 if the New Balance is at least $20;
- 1% of the New Balance (which calculation is rounded down to the nearest dollar) plus the amount of your billed finance charges and any applicable late fee; or
- 1.5% of the New Balance (which calculation is rounded down to the nearest dollar).

However, the Minimum Amount Due never exceeds the New Balance. In calculating the Minimum Amount Due, we may subtract from the New Balance certain fees added to your account during the billing period.

**Application of Payments:** We apply payments and credits to low APR balances before higher APR balances. That means your savings will be reduced if you make transactions that are subject to higher APRs.

**Payment Instructions:** Payments are credited in accordance with the payment instructions on the billing statement. You must pay us in U.S. dollars using a check, similar instrument, or automatic debit that is drawn on and honored by a bank in the U.S. Do not send cash. We can accept late or partial payments, and payments that reflect "paid in full" or other restrictive endorsements, without losing our rights. We reserve the right to accept payments made in foreign currency and instruments drawn on funds on deposit outside the U.S. If we do, we select the currency conversion rate at our discretion and credit your account in U.S. dollars after deducting any costs incurred in processing your payment, or we may bill you separately for such costs.

**Optional Pay by Phone Service:** You may request to make your payment by phone using our optional Pay by Phone Service. Each time you make such a request, you agree to pay us the amount shown in the Pay by Phone section on the back of the billing statement. Our representatives are trained to tell you this amount if you decide to use this optional Pay by Phone Service.

### Credit Reporting

We may report information about your account to credit reporting agencies. Late payments, missed payments, or other defaults on your account may appear on your credit report. If you request cards on your account for others, we may report account information in the names of those other people as well. We may also obtain follow-up credit reports on you (for example, when we review your account for a credit line increase). If you wish to know which agencies we contacted, write us at the Customer Service address on the billing statement.

If you think we reported erroneous information to a credit reporting agency, write us at the Customer Service address on the billing statement. We will promptly investigate the matter and if we agree with you, we will contact each credit reporting agency to which we reported and request a correction. If, after our investigation, we disagree with you, we will tell you in writing or by telephone and tell you how to submit a statement to those agencies for inclusion in your credit report.

### Changes to this Agreement

We may change the rates, fees, and terms of this Agreement at any time for any reason. These reasons may be based on information in your credit report, such as your failure to make payments to another creditor when due, amounts owed to other creditors, the number of credit accounts outstanding, or the number of credit inquiries. These reasons may also include competitive or market-related factors. Changing terms includes adding, replacing, or deleting provisions relating to your account and to the nature, extent, and enforcement of the rights and obligations you or we have relating to this Agreement. These changes are binding on you. However, if the change will cause a fee, rate or minimum payment to increase, we will mail you written notice at least 15 days before the beginning of the billing period in which the change becomes effective. If you do not agree to the change, you must notify us in writing within 25 days after the effective date of the change and pay us the total balance, either at once or under the terms of the unchanged Agreement. Unless we notify you otherwise, use of the card after the effective date of the change shall be deemed acceptance of the new terms, even if the 25 days have not expired.

### Default

You default under this Agreement if you fail to pay the Minimum Amount Due by its due date; exceed your credit line; pay by a check or similar instrument that is not honored or that we must return because it cannot be processed; pay by automatic debit that is returned unpaid; file for bankruptcy; or default under any other Card Agreement that you have with us. If you default, we may close your account and demand immediate payment of the total balance. If you gave us a security interest in a Certificate of Deposit, we may use the deposit amount to pay any amount you owe.

## Refusal of the Card, Closed Accounts, and Related Provisions

**Refusal of the Card:** We do not guarantee approval of transactions and are not liable for transactions that are not approved, either by us or by a third party, even if you have sufficient credit available. We may limit the number of transactions that may be approved in one day. If we detect unusual or suspicious activity, we may suspend your credit privileges until we can verify the activity.

**Preauthorized Charges:** If you default, if the card is lost or stolen, or we change your account for any reason, we may suspend automatic charges with third party vendors. If preauthorized charges are suspended, you are responsible for making direct payment for such charges until you contact the third party to reinstate the automatic charges.

**Lost or Stolen Cards, Account Numbers, or Convenience and Balance Transfer Checks:** If any card, account number, or check is lost or stolen or if you think someone used or may use them without permission, call us at the Customer Service number on the billing statement or the number obtained by calling toll-free or local Directory Assistance. We may require you to provide certain information in writing to help us find out what happened and to comply with our investigation. You must identify for us the charges that were not made by you, or someone authorized by you, and from which you received no benefit.

**Closing Your Account:** You may close your account by notifying us in writing or by calling toll-free at the Customer Service number shown on the billing statement or on the back of your credit card, but must still repay the total balance in accordance with this Agreement. We may close your account or suspend account privileges at any time for any reason without prior notice. We may also reissue a different card at any time. You must return any card to us upon request.

**Security Interest for Secured Accounts:** If your account is a secured account, you gave us a security interest in a Certificate of Deposit to secure repayment of your account. If you withdraw your funds from the Certificate of Deposit, we will close your account.

---

## ARBITRATION

*PLEASE READ THIS PROVISION OF THE AGREEMENT CAREFULLY.* IT PROVIDES THAT ANY DISPUTE MAY BE RESOLVED BY BINDING ARBITRATION. ARBITRATION REPLACES THE RIGHT TO GO TO COURT, INCLUDING THE RIGHT TO A JURY AND THE RIGHT TO PARTICIPATE IN A CLASS ACTION OR SIMILAR PROCEEDING. IN ARBITRATION,

10

A DISPUTE IS RESOLVED BY AN ARBITRATOR INSTEAD OF A JUDGE OR JURY. ARBITRATION PROCEDURES ARE SIMPLER AND MORE LIMITED THAN COURT PROCEDURES.

*Agreement to Arbitrate:* Either you or we may, without the other's consent, elect mandatory, binding arbitration for any claim, dispute, or controversy between you and us (called "Claims").

### Claims Covered

**What Claims are subject to arbitration?** All Claims relating to your account, a prior related account, or our relationship are subject to arbitration, including Claims regarding the application, enforceability, or interpretation of this Agreement and this arbitration provision. All Claims are subject to arbitration, no matter what legal theory they are based on or what remedy (damages, or injunctive or declaratory relief) they seek. This includes Claims based on contract, tort (including intentional tort), fraud, agency, your or our negligence, statutory or regulatory provisions, or any other sources of law; Claims made as counterclaims, cross-claims, third-party claims, interpleaders or otherwise; and Claims made independently or with other claims. A party who initiates a proceeding in court may elect arbitration with respect to any Claim advanced in that proceeding by any other party. Claims and remedies sought as part of a class action, private attorney general or other representative action are subject to arbitration on an individual (non-class, non-representative) basis, and the arbitrator may award relief only on an individual (non-class, non-representative) basis.

**Whose Claims are subject to arbitration?** Not only ours and yours, but also Claims made by or against anyone connected with us or you or claiming through us or you; such as a co-applicant or authorized user of your account; an employee, agent, representative, affiliated company, predecessor or successor, heir, assignee, or trustee in bankruptcy.

**What time frame applies to Claims subject to arbitration?** Claims arising in the past, present, or future, including Claims arising before the opening of your account, are subject to arbitration.

**Broadest Interpretation.** Any questions about whether Claims are subject to arbitration shall be resolved by interpreting this arbitration provision in the broadest way the law will allow it to be enforced. This arbitration provision is governed by the Federal Arbitration Act (the "FAA").

**What about Claims filed in Small Claims Court?** Claims filed in a small claims court are not subject to arbitration, so long as the matter remains in such court and advances only an individual (non-class, non-representative) Claim.

11

## How Arbitration Works

**How does a party initiate arbitration?** The party filing an arbitration must choose one of the following two arbitration firms and follow its rules and procedures for initiating and pursuing an arbitration: American Arbitration Association or National Arbitration Forum. Any arbitration hearing that you attend will be held at a place chosen by the arbitration firm in the same city as the U.S. District Court closest to your then current billing address, or at some other place to which you and we agree in writing. You may obtain copies of the current rules of each of the arbitration firms and forms and instructions for initiating an arbitration by contacting them as follows:

> American Arbitration Association
> 335 Madison Avenue, Floor 10
> New York, NY 10017-4605
> Web site: www.adr.org
> National Arbitration Forum
> P.O. Box 50191
> Minneapolis, MN 55405
> Web site: www.arbitration-forum.com

At any time you or we may ask an appropriate court to compel arbitration of Claims, or to stay the litigation of Claims pending arbitration, even if such Claims are part of a lawsuit, unless a trial has begun or a final judgment has been entered. Even if a party fails to exercise these rights at any particular time, or in connection with any particular Claims, that party can still require arbitration at a later time or in connection with any other Claims.

**What procedures and law are applicable in arbitration?** A single, neutral arbitrator will resolve Claims. The arbitrator will be either a lawyer with at least ten years experience or a retired or former judge, selected in accordance with the rules of the arbitration firm. The arbitration will follow procedures and rules of the arbitration firm in effect on the date the arbitration is filed unless those procedures and rules are inconsistent with this Agreement, in which case this Agreement will prevail. Those procedures and rules may limit the discovery available to you or us. The arbitrator will take reasonable steps to protect customer account information and other confidential information if requested to do so by you or us. The arbitrator will apply applicable substantive law consistent with the FAA and applicable statutes of limitations, will honor claims of privilege recognized at law, and will have the power to award to a party any damages or other relief provided for under applicable law. You or we may choose to have a hearing and be represented by counsel. The arbitrator will make any award in writing and, if requested by you or us,

will provide a brief statement of the reasons for the award. An award in arbitration shall determine the rights and obligations between the named parties only, and only in respect of the Claims in arbitration, and shall not have any bearing on the rights and obligations of any other person, or on the resolution of any other dispute.

**Who pays?** Whoever files the arbitration pays the initial filing fee. If we file, we pay; if you file, you pay, unless you get a fee waiver under the applicable rules of the arbitration firm. If you have paid the initial filing fee and you prevail, we will reimburse you for that fee. If there is a hearing, we will pay any fees of the arbitrator and arbitration firm for the first day of that hearing. All other fees will be allocated as provided by the rules of the arbitration firm and applicable law. However, we will advance or reimburse your fees if the arbitration firm or arbitrator determines there is good reason for requiring us to do so, or if you ask us and we determine there is good reason for doing so. Each party will bear the expense of that party's attorneys, experts, and witnesses, and other expenses, regardless of which party prevails, but a party may recover any or all expenses from another party if the arbitrator, applying applicable law, so determines.

**Who can be a party?** Claims must be brought in the name of an individual person or entity and must proceed on an individual (non-class, non-representative) basis. The arbitrator will not award relief for or against anyone who is not a party. If you or we require arbitration of a Claim, neither you, we, nor any other person may pursue the Claim in arbitration as a class action, private attorney general action or other representative action, nor may such Claim be pursued on your or our behalf in any litigation in any court. Claims, including assigned Claims, of two or more persons may not be joined or consolidated in the same arbitration. However, applicants, co-applicants, authorized users on a single account and/or related accounts, or corporate affiliates are here considered as one person.

**When is an arbitration award final?** The arbitrator's award is final and binding on the parties unless a party appeals it in writing to the arbitration firm within fifteen days of notice of the award. The appeal must request a new arbitration before a panel of three neutral arbitrators designated by the same arbitration firm. The panel will consider all factual and legal issues anew, follow the same rules that apply to a proceeding using a single arbitrator, and make decisions based on the vote of the majority. Costs will be allocated in the same way they are allocated for arbitration before a single arbitrator. An award by a panel is final and binding on the parties after fifteen days has passed. A final and binding award is subject

## Survival and Severability of Terms

This arbitration provision shall survive: (i) termination or changes in the Agreement, the account, or the relationship between you and us concerning the account; (ii) the bankruptcy of any party; and (iii) any transfer, sale or assignment of your account, or any amounts owed on your account, to any other person or entity. If any portion of this arbitration provision is deemed invalid or unenforceable, the entire arbitration provision shall not remain in force. No portion of this arbitration provision may be amended, severed or waived absent a written agreement between you and us.

## Applicable Law and Enforcing our Rights

**Applicable Law:** The terms and enforcement of this Agreement shall be governed by federal law and the law of South Dakota, where we are located.

**Enforcing this Agreement:** We can delay in enforcing or fail to enforce any of our rights under this Agreement without losing them.

**Collection Costs:** If we refer collection of your account to a lawyer who is not our salaried employee, you are liable for any reasonable attorney's fees we incur, plus the costs and expenses of any legal action, to the extent permitted by law.

**Assignment:** We may assign any or all of our rights and obligations under this Agreement to a third party.

## For Further Information

Call the toll-free Customer Service telephone number shown on the billing statement or on the back of your card. You can also call local or toll-free Directory Assistance to get our telephone number.

Ken Stork
President & CEO

Citibank (South Dakota), N.A.
P.O. Box 6000
Sioux Falls, SD 57117

© 2006 Citibank (South Dakota), N.A.

## What To Do If There's An Error In Your Bill.

**Your Billing Rights. Keep This Notice For Future Use.**
This notice contains important information about your rights and our responsibilities under the Fair Credit Billing Act.

**Notify Us In Case of Errors or Questions About Your Bill.**
If you think your billing statement is wrong, or if you need more information about a transaction on your billing statement, write to us (on a separate sheet) as soon as possible at the address provided in the Billing Rights Summary portion on the back of your statement. We must hear from you no later than 60 days after we sent you the first statement on which the error or problem appeared. You can telephone us, but doing so will not preserve your rights.

In your letter, give us the following information:
- Your name and account number.
- The dollar amount of the suspected error.
- Describe the error and explain, if you can, why you believe there is an error. If you need more information, describe the item you are unsure about.
- Please sign your letter.

If you authorized us to pay your credit card bill automatically from your savings or checking account, you can stop the payment on any amount you think is wrong. To stop the payment you must tell us at least three business days before the automatic payment is scheduled to occur.

**Your Rights and Our Responsibilities After We Receive Your Written Notice.**
We must acknowledge your letter within 30 days, unless we have corrected the error by then. Within 90 days, we must either correct the error or explain why we believe your billing statement was correct. After we receive your letter, we cannot try to collect any amount you question, or report your account as delinquent. We can continue to bill you for the amount you question, including finance charges, and we can apply any unpaid amount against your credit line. You do not have to pay any questioned amount while we are investigating, but you are still obligated to pay the parts of your balance that are not in question.

If we find that we made a mistake on your billing statement, you will not have to pay any finance charges related to any questioned amount. If we didn't make a mistake, you may have to pay finance charges, and you will have to make up any missed payments on the questioned amount. In either case, we will send you a statement of the amount you owe and the date it is due.

If you fail to pay the amount that we think you owe, we may report you as delinquent. However, if our explanation does not satisfy you and you write to us within 10 days telling us that you still refuse to pay, we must tell anyone we report you to that you have a question about your bill. And, we must tell you the name and address of anyone to whom we reported your account information. We must tell anyone we report you to that the matter has been settled between us when it is finally settled.

If we don't follow these rules, we can't collect the first $50 of the questioned amount, even if your billing statement was correct.

### Special Rule for Credit Card Purchases.

If you have a problem with the quality of property or services that you purchased with a credit card, and you have tried in good faith to correct the problem with the merchant, you may have the right not to pay the remaining amount due on the property or services. There are two limitations on this right:

- You must have made the purchase in your home state or, if not within your home state, within 100 miles of your current address; and
- The purchase price must have been more than $50.

These limitations do not apply if we own or operate the merchant, or if we mailed you the advertisement for the property or services.

© 2006 Citibank (South Dakota), N.A.

5049170U       Pr. 07/06   109060                    06/06

# EXHIBIT "C"

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
FIRST MUNICIPAL DISTRICT

| | | |
|---|---|---|
| RESURGENCE FINANCIAL, LLC, an Illinois Limited Liability Company | ) ) ) | Case No. |
| Plaintiff | ) ) ) | **08M1   135403** |
| v. | ) ) | |
| MIRIAM S MARTINEZ | ) ) | |
| Defendant(s). | ) ) ) ) ) | |

## AFFIDAVIT OF CLAIM

I, Eileen M. Mahon, an employee of Resurgence Financial, LLC, being first duly sworn upon my oath depose and state as follows:

1.    I am over the age of 21, under no legal disability, and if called and sworn as a witness in this cause, would testify that I have personal knowledge of the facts set forth in this petition.

2.    I am employed by Resurgence Financial, LLC, an Illinois Limited Liability Company ("Resurgence").

3.    Resurgence is proceeding in this matter on an assignment from UNIFUND.

4.    I am familiar with the account of MIRIAM S MARTINEZ with Resurgence.

5.    I am familiar with the computer records of Resurgence and how to search the records of Resurgence to determine the status of accounts with our company.

6.    I have the authority to review the computer records of Resurgence.

7.    I have reviewed the records of Resurgence, which reflect that MIRIAM S MARTINEZ was issued a credit card by CITIBANK SOUTH DAKOTA NA / DIVIDEND, with an account number of ▓▓▓▓▓▓5516 and that the issuer, CITIBANK SOUTH DAKOTA NA / DIVIDEND charged off said account on January 19, 2006, as a result of Defendant defaulting in making payments pursuant to the Cardmember Agreement.

8.    I have reviewed the computer records of Resurgence.  There is a balance due to Resurgence on this account in the amount of $4,375.41 and Resurgence has not received payment.

FURTHER, THE AFFIANT SAYETH NAUGHT.

"OFFICIAL ⎯⎯⎯
TRESSA I PECK
Notary Public, State of Illinois
My Commission Expires 11/4/2009

*Eileen M. Mahon*

RESURGENCE FINANCIAL, LLC
By its duly authorized agent

EILEEN M. MAHON

SUBSCRIBED AND SWORN TO before me this 15th day of April, 2008.

NOTARY PUBLIC

R0060494

UNITED STATES OF AMERICA

STATE OF ILLINOIS

COUNTY OF COOK

FIRST MUNICIPAL DISTRICT

| | | |
|---|---|---|
| RESURGENCE FINANCIAL, LLC, an Illinois Limited Liability Company,<br><br>Plaintiff<br><br>v.<br><br>MIRIAM S MARTINEZ<br><br>Defendant(s) | CASE NUMBER<br><br>_____ | <br><br><br><br><br>FILE STAMP HERE |

## AFFIDAVIT TO MILITARY SERVICE

Resurgence Financial LLC, by its duly authorized agent, being first duly sworn upon my oath depose and states:

With respect to (each) defendant, MIRIAM S MARTINEZ, ████████████ ████████████ :

☐    the Defendant is

☒    the Defendant is not

☐    I am unable to determine whether the Defendant is

in the military service of the United States of America.

This affidavit is based on these facts:  I searched on the Department of Defense website:  www.dmdc.osd.mil/scra/owa/home and the report indicated that the Defendant (is) (is not) on active military duty.

"OFFICIAL SEAL"
TRESSA I PECK
Notary Public, State of Illinois
My Commission Expires 11/4/2009

*Eileen M Mahon*

Under penalties as provided by law pursuant to Section 1-109 of the Code of Civil Procedure, the above signed certifies that the statements set forth in this instrument are true and correct, except as to matters therein stated to be on the information and belief and as to such matters the above signed certifies as aforesaid that s/he believes the same to be true.

EILEEN M. MAHON

Sworn and Subscribed before me this 15th day of April , 2008

NOTARY PUBLIC

RESURGENCE FINANCIAL, LLC
Legal Department
4100 Commercial Avenue
Northbrook, IL 60062
847/656-2200
#41776

08CV3519
JUDGE PALLMEYER
MAGISTRATE JUDGE MASON

TC

# APPENDIX B

R0060514

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
### FIRST MUNICIPAL DISTRICT

RESURGENCE FINANCIAL, LLC, an Illinois          )
Limited Liability Company                       )
                                                )    Case No.
                Plaintiff                        )    **08M1   136266**
                                                )    Amount Claimed: $8,750.18
        v.                                       )
                                                )    Return Date:  JUN  9 2008
DIONISIA BARRERA                                 )
                Defendant(s).                     )
                                                )
                                                )
                                                )
                                                )
                                                )

### VERIFIED COMPLAINT AT LAW

RESURGENCE FINANCIAL, LLC, an Illinois Limited Liability Company ("Plaintiff"), by and through one of

its staff attorneys, complains of DIONISIA BARRERA ("Defendant"), as follows:

1.      Pursuant to 735 ILCS 5/2-403, Plaintiff is proceeding in this cause as the Assignee of CITIBANK SOUTH

DAKOTA NA / CLASSIC ("CITIBANK SOUTH DAKOTA NA / CLASSIC"), as set forth in the Bill of Sale attached

hereto, made a part hereof and marked as Exhibit "A".

2.      CITIBANK SOUTH DAKOTA NA  / CLASSIC and Defendant entered into a Cardmember Agreement

("Agreement"), wherein CITIBANK SOUTH DAKOTA NA  / CLASSIC issued a credit card account number

████████2504 to Defendant and Defendant agreed to pay all amounts charged by the use if the card.  A copy of the

Agreement containing the terms and conditions governing the use of the credit card is attached hereto, made a part here

of and marked as Exhibit "B".

3.      Defendant resides in the State of Illinois.

4.      Thereafter, Defendant incurred charges by use of the credit card.

5.      As set forth in the Affidavit of Plaintiff, attached hereto, made a part hereof and marked as Exhibit "C", there

is now due and owing from Defendant to Plaintiff the sum of $8,750.18, of which no part has been paid, although duly

demanded.

WHEREFORE, Plaintiff, Resurgence Financial, LLC, an Illinois Limited Liability Company, demands a judgment against the Defendant(s) DIONISIA BARRERA, in the sum of $8,750.18, plus court costs.

Respectfully Submitted,

RESURGENCE FINANCIAL, LLC,
an Illinois Limited Liability Company,
Plaintiff herein,

By One of Its Staff Attorneys

VERIFICATION    ARAVIND RAGHU, ESQ.

Under penalties as provided by law pursuant to Section 1-109 of the Code of Civil Procedure, the undersigned certifies that the statements set forth in this instrument are true and correct, except as to matters therein stated to be on information an belief, and as to such matters the undersigned certifies as aforesaid that s/he verily believes the same to be true.

RESURGENCE FINANCIAL, LLC
By One of Its Attorneys

ARAVIND RAGHU, ESQ.

RESURGENCE FINANCIAL, LLC
Legal Department
4100 Commercial Avenue
Northbrook, IL 60062
847/656-2200
Firm No. 41776

EXHIBIT "A"

## BILL OF SALE, ASSIGNMENT AND ASSUMPTION AGREEMENT

THIS BILL OF SALE, ASSIGNMENT AND ASSUMPTION AGREEMENT is dated as of November 29, 2007, between Citibank (South Dakota), N.A., a national banking association organized under the laws of the United States, located at 701 East 60th Street North, Sioux Falls, SD 57117 (the "Bank") and Unifund Portfolio A, LLC ("Buyer"), with its headquarters/principal place of business at 10625 Techwoods Circle, Cincinnati, OH 45242.

For value received and subject to the terms and conditions of the Purchase and Sale Agreement dated November 29, 2007, between Buyer and the Bank (the "Agreement"), the Bank does hereby transfer, sell, assign, convey, grant, bargain, set over and deliver to Buyer, and to Buyer's successors and assigns, all of the Bank's right, title and interest in and to the Accounts described in Section 1.2 of the Agreement.

Except as provided for in the Agreement, this Bill of Sale, Assignment and Assumption Agreement is executed without recourse and without representations or warranties including, without limitation, warranties as to collectibility.

Citibank (South Dakota), N.A.

By: _____
              (Signature)

Name:  Douglas C. Morrison

Title:  Vice President & CFO

Unifund Portfolio A, LLC

By: _____
              (Signature)

Name: _Henry N. Thomas_

Title: _Vice President_



Unifund CCR Partners

## BILL OF SALE

Unifund CCR Partners, for value received and in accordance with the terms of the Accounts Receivable Purchase Agreement by and among Unifund CCR Partners and Resurgence Financial, LLC ("Purchaser"), dated as of March 4th, 2008 (the "Agreement"), does hereby sell, assign, and transfer to Purchaser all of its good and marketable title, free and clean of all liens, claims and encumbrances in and to the Accounts listed in the Account Schedule attached as Appendix A to the Agreement, without recourse and without representation or warranty of collectibility, or otherwise, except to the extent stated in the Agreement.

Executed on March 4th, 2008.

UNIFUND CCR PARTNERS

By
Joel Rosenthal
Director, Sales and Marketing

23

**AFFIDAVIT**

I, Joel Rosenthal, as Director of Sales and Marketing, for the Unifund Group, being duly sworn, deposes, and says:

1. Unifund CCR Partners is a New York General Partnership, and is the operating company for the Unifund Group.

2. Unifund Portfolio A, LLC is an Ohio limited liability company.

3. Unifund CCR Partners and Unifund Portfolio A, LLC share 100% common ownership.

4. Unifund Portfolio A, LLC purchased various portfolios of accounts from multiple sellers.

5. In accordance with a Servicing Agreement between Unifund CCR Partners and Unifund Portfolio A, LLC dated July 6, 2001; Unifund CCR Partners has the right and authority to sell accounts on behalf of Unifund Portfolio A, LLC.

6. Pursuant to such right and authority, Unifund CCR Partners sold a portfolio of 1897 accounts to Resurgence Financial, LLC via a Purchase Agreement and Bill of Sale dated March 19, 2008, on behalf of Unifund Portfolio A, LLC.

Further Affiant Sayeth Not.

Joel Rosenthal
Director of Sales and Marketing
Unifund CCR Partners

I do certify that the above sworn statement was duly taken and subscribed in my presence, this 17th day of _March_, 2007.

Notary Public

JENNIFER A DUNCAN
NOTARY PUBLIC
STATE OF OHIO
Comm. Expires
July 04, 2012

# EXHIBIT "B"

# CARD AGREEMENT

This Card Agreement, which includes your card carrier, is your contract with us and governs the use of your card and account. The card carrier contains important account information, including your annual percentage rates and the amount of any membership fee. Please read and keep these documents for your records.

## FACTS ABOUT RATES AND FEES

For complete information about these facts, please see the related sections in this Card Agreement.

## RATES—FINANCE CHARGES

**Purchase and Cash Advance APRs:** See card carrier. All APRs based on the Prime Rate may vary each billing period. **Default APR:** See card carrier. The Default APR equals the Prime Rate plus up to 23.99%, or up to 28.99%, whichever is greater. All APRs may automatically increase up to the Default APR if you fail to make a payment to us when due, exceed your credit line, or make a payment to us that is not honored. **Minimum Finance Charge:** $0.50.

## TRANSACTION FEES—FINANCE CHARGES

**Balance Transfer Fee:** 3% of each balance transfer, $5 minimum, $75 maximum.

**Purchases Made in a Foreign Currency Fee:** 3% of each purchase after its conversion into U.S. dollars.

**Cash Advance Fee:** 3% of each cash advance, $5 minimum.

## OTHER FEES

**Late Fee:** $15 on balances up to $100; $29 on balances of $100 up to $250; $39 on balances of $250 and over.

**Over-the-Credit-Line Fee:** $39.

**Annual Membership Fee:** See card carrier.

**Returned Payment Fee:** $39.

**Returned Convenience Check Fee:** $39.

**Stop Payment on Convenience Check Fee:** $39.

**Rates, fees, and terms may change.** We may change the rates, fees, and terms of your account at any time for any reason. These reasons may be based on information in your credit report, such as your failure to make payments to another creditor when due, amounts owed to other creditors, the number of credit accounts outstanding, or the number of credit inquiries. These reasons may also include competitive or market-related factors. If we make a change for any of these reasons, you will receive advance notice and a right to opt out in accordance with applicable law.

## Definitions

**account:** the relationship established between you and us by this Card Agreement.

**APR:** annual percentage rate.

**authorized user:** any person you allow to use your account.

**card:** one or more cards or other account access devices, including account numbers, that we issue to you to obtain credit under this Card Agreement.

**Card Agreement (or Agreement):** this document and the card carrier.

**we, us, and our:** Citibank (South Dakota), N.A.; the issuer of your account.

**you, your, and yours:** the person who applied to open the account and any other person responsible for complying with this Agreement, including the person to whom we address billing statements.

## Your Account

**You agree** to use your account in accordance with this Agreement. This Agreement is binding on you unless you cancel your account within 30 days after receiving the card and you have not used or authorized use of the card. You must pay us for all amounts due on your account as specified in this Agreement. Your account must only be used for lawful transactions.

**Authorized Users:** You may allow authorized users to use your account. You may request additional cards for authorized users. You must pay us for all charges made by authorized users even if you did not intend to be responsible for those charges. You must notify us to revoke any permission you give to an authorized user to use a card or to use your account.

**Credit Line:** Your initial credit line appears on the card carrier. The full amount of your credit line is available to buy or lease goods or services where the card is honored. Part of your credit line, called the cash advance limit, is available for cash advances. We may change your credit line or cash advance limit at any time for any reason. We will notify you of any change, but the change may take effect before you receive the notice. The total balance on your account, including periodic finance charges and fees, must always remain below the credit line. However, if the total balance exceeds your credit line you must still pay us. If your account has a credit balance, we may reduce the credit balance by any new charges on your account. You may not maintain a credit balance in excess of your credit line.

**Billing Statement:** Your billing statement shows the total balance, periodic finance charges, fees, minimum amount

due, and payment due date. It also shows your current credit line and cash advance limit, an itemized list of current charges, payments and credits, a rate summary and other important information. We deliver a statement to only one address. You must notify Customer Service of a change in address. If we deem your account uncollectible or institute collection proceedings by sending it to an outside agency or attorney for collection, we may stop sending your statements. Periodic finance charges and fees continue to accrue even if we stop sending statements.

The total amount you owe us appears as the New Balance on the billing statement. To determine the New Balance we begin with the total balance at the start of the billing period. We add any purchases or cash advances and subtract any credits or payments credited as of that billing period. We then add any periodic finance charges or fees and make other adjustments.

## APRs

**APRs Based on Prime:** We calculate any APR based on the U.S. Prime Rate ("Prime Rate") by adding the applicable amount that appears on the card carrier to the Prime Rate. For each billing period we use the Prime Rate published in *The Wall Street Journal* two business days prior to the Statement/Closing Date for that billing period. If *The Wall Street Journal* does not publish the Prime Rate, we may substitute a similar published rate. A change in an APR due to a change in the Prime Rate takes effect as of the first day of the billing period for which we calculate the APR. We apply the new applicable APR to any existing balances, subject to any promotional rate that may apply.

**Default Rate:** All your APRs may increase if you default under any Card Agreement that you have with us because you fail to make a payment to us when due, you exceed your credit line, or you make a payment to us that is not honored. In these circumstances, we may automatically increase your APRs (including any promotional APRs) on all balances to the Default APR, which equals the Prime Rate plus up to 23.99%, or up to 28.99%, whichever is greater. Factors considered in determining your Default APR may include how long your account has been open, the timing or seriousness of a default under any Card Agreement that you have with us, or other indications of account performance. The Default APR takes effect as of the first day of the billing period in which you default. We may lower the APR for new purchases and/or cash advances if you meet the terms of all Card Agreements that you have with us for six consecutive billing periods. Existing balances remain subject to the Default APR until paid in full, unless we tell you otherwise.

2

3

Effect of APR Increases: If an APR increases, periodic finance charges increase and your minimum payment may increase.

## Periodic Finance Charges Based On APRs
**Periodic Finance Charges:** Periodic finance charges are finance charges that are added to your account when we apply the applicable APR to the balances on your account. We calculate periodic finance charges separately for each balance subject to different terms, for example, standard purchases, standard cash advances, and each promotional offer. The total periodic finance charge for the billing period equals the daily periodic finance charges for each balance for each day in the billing period. This method of calculating periodic finance charges results in daily compounding of finance charges.

**When Periodic Finance Charges Begin to Accrue:** Periodic finance charges begin to accrue on a charge from the date it is added to the daily balance and continue to accrue until payment in full is credited to your account. (Charges include purchases, balance transfers, cash advances, transaction fees, other fees, and any minimum finance charge.) You can avoid periodic finance charges on purchases (excluding balance transfers) that appear on your current billing statement if you paid the New Balance on the last statement by the payment due date on that statement and you pay your New Balance by the payment due date on your current statement. If you made a balance transfer, you may be unable to avoid periodic finance charges on new purchases, as described in the balance transfer offer.

**Calculation of Periodic Finance Charges:**
• For each balance, we multiply the daily balance by the applicable daily periodic rate. We do this for each day in the billing period. A daily periodic rate is the applicable APR divided by 365. A billing period begins on the day after the Statement/Closing Date of the previous billing period and includes the Statement/Closing Date of the current billing period.
• To get the daily balance, we take the beginning balance for each balance every day (including unpaid periodic finance charges from previous billing periods), add any new charges, and any periodic finance charge on the previous day's balance, subtract any credits or payments credited as of that day, and make other adjustments. A credit balance is treated as a balance of zero.
• We add a charge to the daily balance as follows: We add a purchase to the appropriate balance as of the Sale Date on the billing statement. We add a balance transfer or cash advance to the appropriate balance as of the Post Date on the statement. We add any transaction fees for purchases,

balance transfers, or cash advances to the same balance as the transaction as of the same date the transaction is added to the daily balance. The Post Date is the date we receive your request for the balance transfer or cash advance, including a request that we complete a balance transfer or cash advance convenience check for a specific amount. If you send a balance transfer or convenience check directly to someone, the Post Date is the date we receive the check for payment.
• To get the total periodic finance charge, we add up all of the daily periodic finance charges for each balance for each day in the billing period.
• For each balance, the Balance Subject to Finance Charge on the statement is the average of the daily balances during the billing period. If you multiply this figure for each balance by the number of days in the billing period and by the applicable daily periodic rate, the result is the periodic finance charges assessed for that balance, except for minor variations caused by rounding.

**Minimum Finance Charge:** If the periodic rate finance charge would otherwise be less than $0.50, we assess a minimum FINANCE CHARGE of $0.50. We add the amount to any balance that is assessed a finance charge.

## Transaction Fees
**Transaction Fees and APRs:** If you are assessed a transaction fee for a balance transfer, a purchase made in a foreign currency, or a cash advance, the transaction fee will cause the APR on the billing statement on which the transaction first appears to exceed your nominal APR.

**Transaction Fee for Balance Transfers:** You obtain a balance transfer if you obtain funds through a balance transfer check or transfer a balance without using a cash advance convenience check. We treat balance transfers as purchases unless otherwise provided in this Agreement. For each balance transfer we add an additional FINANCE CHARGE of 3% of the amount of the balance transfer, but not less than $5 or more than $75.

**Transaction Fee for Purchases Made in a Foreign Currency:** For each purchase made in a foreign currency we add an additional FINANCE CHARGE of 3% of the purchase amount after its conversion into U.S. dollars.

**Transaction Fee for Cash Advances:** You obtain a cash advance if you obtain funds through an automated teller machine (ATM), convenience check, home banking, or financial institution, make a wire transfer; obtain a money order, traveler's check, lottery ticket, casino chip, or similar item; or engage in a similar transaction. For each cash

advance we add an additional **FINANCE CHARGE** of 3% of the amount of the cash advance, but not less than $5.

## Other Fees

**Late Fee:** We add a late fee to the standard purchase balance for each billing period you fail to pay, by its due date, the Minimum Amount Due (less the Amount Over Credit Line shown on your billing statement). This fee is based on your account balance as of the payment due date. It is: $15 on balances up to $100; $29 on balances of $100 up to $250; and $39 on balances of $250 and over.

**Over-the-Credit-Line Fee:** We add a $39 fee to the standard purchase balance if your account balance exceeds your credit line at any time during the billing period. We add this fee even if transactions we authorize or periodic finance charges, fees, and other charges you incur are a reason the account balance exceeds your credit line. We add this fee even if the account balance falls below your credit line by the end of the billing period.

**Annual Membership Fee:** We add any applicable annual membership fee to the standard purchase balance. This fee is non-refundable unless you notify us to cancel your account within 30 days of the mailing or delivery date of the billing statement on which the fee is billed.

**Returned Payment Fee:** We add a $39 fee to the standard purchase balance if a payment check or similar instrument is not honored or is returned because it cannot be processed, or if an automatic debit is returned unpaid. We assess this fee the first time your check or payment is not honored, even if it is honored upon resubmission.

**Returned Convenience Check Fee:** We add a $39 fee to the standard advance balance if we decline to honor a convenience check. We may decline to honor these checks if, for example, the amount of the check would cause the balance to exceed the cash advance limit or credit line, if you default, if you did not comply with our instructions regarding the check, or if your account has been closed.

**Stop Payment on Convenience Check Fee:** We add a $39 fee to the standard advance balance if we honor your request to stop payment on a convenience check. To stop payment on a convenience check write us at P.O. Box 6500, Sioux Falls, South Dakota 57117, or call the Customer Service number on the billing statement. If you call, you must confirm the call in writing within 14 days. A written stop payment order remains in effect for 6 months unless renewed in writing.

**Balance Transfer Checks and Convenience Checks:** Each check must be in the form it was issued and used according

to any instructions we give. The checks must not be used to pay an amount owed us under this or another Card Agreement that you have with us. We do not certify these checks or return any such checks that have been paid.

## Information on Foreign Currency Conversion Procedures

If you make a transaction in a foreign currency, other than a cash advance made at a branch or ATM of one of our affiliates, MasterCard, Visa or American Express, depending on which card is used, converts the amount into U.S. dollars as follows:

- MasterCard complies with its foreign currency conversion procedures then in effect. MasterCard currently uses a conversion rate in effect one day prior to its transaction processing date. Such rate is either a wholesale market rate or the government-mandated rate.
- Visa complies with its foreign currency conversion procedures then in effect. Visa currently uses a conversion rate in effect on its applicable central processing date. Such rate is either a rate it selects from the range of rates available in wholesale currency markets, which may vary from the rate it receives, or the government-mandated rate.
- American Express complies with its foreign currency conversion procedures then in effect. Unless a particular rate is required by applicable law, the rate used by American Express shall be the highest interbank rate selected on the business day prior to the day on which the transaction is processed by American Express.

If a cash advance is made in a foreign currency at a branch or ATM of one of our affiliates, the amount is converted into U.S. dollars by our affiliate in accordance with its foreign currency conversion procedures then in effect. Our affiliate currently uses a conversion rate in effect on its applicable processing date. Such rate is either a mid-point market rate or the government-mandated rate.

The foreign currency conversion rate in effect on the applicable processing date for a transaction may differ from the rate in effect on the Sale or Post date on your billing statement for that transaction.

If a transaction is converted by a third party prior to such transaction being processed by MasterCard, Visa, or American Express, the foreign currency conversion rate for that transaction will be the rate selected by that third party.

## Payments

**Minimum Amount Due:** Each month you must pay at least the Minimum Amount Due by the payment due date. The

sooner you pay the New Balance, the less you will pay in periodic finance charges.

To calculate the Minimum Amount Due, we begin with any past due amount and add any amount in excess of your credit line. We then add the largest of the following:

- The New Balance on the billing statement if it is less than $20;
- $20 if the New Balance is at least $20;
- 1% of the New Balance (which calculation is rounded down to the nearest dollar) plus the amount of your billed finance charges and any applicable late fee; or
- 1.5% of the New Balance (which calculation is rounded down to the nearest dollar).

However, the Minimum Amount Due never exceeds the New Balance. In calculating the Minimum Amount Due, we may subtract from the New Balance certain fees added to your account during the billing period.

**Application of Payments:** We apply payments and credits to low APR balances before higher APR balances. That means your savings will be reduced if you make transactions that are subject to higher APRs.

**Payment Instructions:** Payments are credited in accordance with the payment instructions on the billing statement. You must pay us in U.S. dollars using a check, similar instrument, or automatic debit that is drawn on and honored by a bank in the U.S. Do not send cash. We can accept late or partial payments and payments that reflect "paid in full" or other restrictive endorsements, without losing our rights. We reserve the right to accept payments made in foreign currency and instruments drawn on funds on deposit outside the U.S. If we do, we select the currency conversion rate at our discretion and credit your account in U.S. dollars after deducting any costs incurred in processing your payment, or we may bill you separately for such costs.

**Optional Pay by Phone Service:** You may request to make your payment by phone using our optional Pay by Phone Service. Each time you make such a request, you agree to pay us the amount shown in the Pay by Phone section on the back of the billing statement. Our representatives are trained to tell you this amount if you decide to use this optional Pay by Phone Service.

## Credit Reporting

We may report information about your account to credit reporting agencies. Late payments, missed payments, or other defaults on your account may appear on your credit report. If you request cards on your account for others, we may report account information in the names of those other

people as well. We may also obtain follow-up credit reports on you (for example, when we review your account for a credit line increase). If you wish to know which agencies we contacted, write us at the Customer Service address on the billing statement.

If you think we reported erroneous information to a credit reporting agency, write us at the Customer Service address on the billing statement. We will promptly investigate the matter and if we agree with you, we will contact each credit reporting agency to which we reported and request a correction. If, after our investigation, we disagree with you, we will tell you in writing or by telephone and tell you how to submit a statement to those agencies for inclusion in your credit report.

## Changes to this Agreement

We may change the rates, fees, and terms of this Agreement at any time for any reason. These reasons may be based on information in your credit report, such as your failure to make payments to another creditor when due, amounts owed to other creditors, the number of credit accounts outstanding, or the number of credit inquiries. These reasons may also include competitive or market-related factors. Changing terms includes adding, replacing, or deleting provisions relating to your account and to the nature, extent, and enforcement of the rights and obligations you or we have relating to this Agreement. These changes are binding on you. However, if the change will cause a fee, rate or minimum payment to increase, we will mail you written notice at least 15 days before the beginning of the billing period in which the change becomes effective. If you do not agree to the change, you must notify us in writing within 25 days after the effective date of the change and pay us the total balance, either at once or under the terms of the unchanged Agreement. Unless we notify you otherwise, use of the card after the effective date of the change shall be deemed acceptance of the new terms, even if the 25 days have not expired.

## Default

You default under this Agreement if you fail to pay the Minimum Amount Due by its due date; exceed your credit line; pay by a check or similar instrument that is not honored or that we must return because it cannot be processed; pay by automatic debit that is returned unpaid; file for bankruptcy; or default under any other Card Agreement that you have with us. If you default, we may close your account and demand immediate payment of the total balance. If you gave us a security interest in a Certificate of Deposit, we may use the deposit amount to pay any amount you owe.

8

9

## Refusal of the Card, Closed Accounts, and Related Provisions

**Refusal of the Card:** We do not guarantee approval of transactions and are not liable for transactions that are not approved, either by us or by a third party, even if you have sufficient credit available. We may limit the number of transactions that may be approved in one day. If we detect unusual or suspicious activity, we may suspend your credit privileges until we can verify the activity.

**Preauthorized Charges:** If you default, if the card is lost or stolen, or if we change your account for any reason, we may suspend automatic charges with third party vendors. If preauthorized charges are suspended, you are responsible for making direct payment for such charges until you contact the third party to reinstate the automatic charges.

**Lost or Stolen Cards, Account Numbers, or Convenience and Balance Transfer Checks:** If any card, account number or check is lost or stolen or if you think someone used or may use them without permission, call us at the Customer Service number on the billing statement or the number obtained by calling toll-free or local Directory Assistance. We may require you to provide certain information in writing to help us find out what happened and to comply with our investigation. You must identify for us the charges that were not made by you, or someone authorized by you, and from which you received no benefit.

**Closing Your Account:** You may close your account by notifying us in writing or by calling toll-free at the Customer Service number shown on the billing statement or on the back of your credit card, but must still repay the total balance in accordance with this Agreement. We may close your account or suspend account privileges at any time for any reason without prior notice. We may also reissue a different card at any time. You must return any card to us upon request.

**Security Interest for Secured Accounts:** If your account is a secured account, you gave us a security interest in a Certificate of Deposit to secure repayment of your account. If you withdraw your funds from the Certificate of Deposit, we will close your account.

## ARBITRATION

*PLEASE READ THIS PROVISION OF THE AGREEMENT CAREFULLY. IT PROVIDES THAT ANY DISPUTE MAY BE RESOLVED BY BINDING ARBITRATION. ARBITRATION REPLACES THE RIGHT TO GO TO COURT, INCLUDING THE RIGHT TO A JURY AND THE RIGHT TO PARTICIPATE IN A CLASS ACTION OR SIMILAR PROCEEDING. IN ARBITRATION,*

A DISPUTE IS RESOLVED BY AN ARBITRATOR INSTEAD OF A JUDGE OR JURY. ARBITRATION PROCEDURES ARE SIMPLER AND MORE LIMITED THAN COURT PROCEDURES.

*Agreement to Arbitrate:* Either you or we may, without the other's consent, elect mandatory, binding arbitration for any claim, dispute or controversy between you and us (called "Claims").

### Claims Covered

**What Claims are subject to arbitration?** All Claims relating to your account, a prior related account, or our relationship are subject to arbitration, including Claims regarding the application, enforceability, or interpretation of this Agreement and this arbitration provision. All Claims are subject to arbitration, no matter what legal theory they are based on or what remedy (damages, or injunctive or declaratory relief) they seek. This includes Claims based on contract, tort (including intentional tort), fraud, agency, your or our negligence, statutory or regulatory provisions, or any other sources of law. Claims made as counterclaims, cross-claims, third-party claims, interpleaders or otherwise, and Claims made independently or with other claims. A party who initiates a proceeding in court may elect arbitration with respect to any Claim advanced in that proceeding by any other party. Claims and remedies sought as part of a class action, private attorney general or other representative action are subject to arbitration on an individual (non-class, non-representative) basis, and the arbitrator may award relief only on an individual (non-class, non-representative) basis.

**Whose Claims are subject to arbitration?** Not only ours and yours, but also Claims made by or against anyone connected with us or you or claiming through us or you, such as a co-applicant or authorized user of your account, an employee, agent, representative, affiliated company, predecessor or successor, heir, assignee, or trustee in bankruptcy.

**What time frame applies to Claims subject to arbitration?** Claims arising in the past, present, or future, including Claims arising before the opening of your account, are subject to arbitration.

**Broadest Interpretation:** Any questions about whether Claims are subject to arbitration shall be resolved by interpreting this arbitration provision in the broadest way the law will allow it to be enforced. This arbitration provision is governed by the Federal Arbitration Act (the "FAA").

**What about Claims filed in Small Claims Court?** Claims filed in a small claims court are not subject to arbitration, so long as the matter remains in such court and advances only an individual (non-class, non-representative) Claim.

10

11

## How Arbitration Works

How does a party initiate arbitration? The party filing an arbitration must choose one of the following two arbitration firms and follow its rules and procedures for initiating and pursuing an arbitration: American Arbitration Association or National Arbitration Forum. Any arbitration hearing that you attend will be held at a place chosen by the arbitration firm in the same city as the U.S. District Court closest to your then current billing address, or at some other place to which you and we agree in writing. You may obtain copies of the current rules of each of the arbitration firms and forms and instructions for initiating an arbitration by contacting them as follows:

American Arbitration Association
335 Madison Avenue, Floor 10
New York, NY 10017-4605
Web site: www.adr.org

National Arbitration Forum
P.O. Box 50191
Minneapolis, MN 55405
Web site: www.arbitration-forum.com

At any time you or we may ask an appropriate court to compel arbitration of Claims, or to stay the litigation of Claims pending arbitration, even if such Claims are part of a lawsuit, unless a trial has begun or a final judgment has been entered. Even if a party fails to exercise these rights at any particular time, or in connection with any particular Claims, that party can still require arbitration at a later time or in connection with any other Claims.

What procedures and law are applicable in arbitration? A single, neutral arbitrator will resolve Claims. The arbitrator will be either a lawyer with at least ten years experience or a retired or former judge, selected in accordance with the rules of the arbitration firm. The arbitration will follow procedures and rules of the arbitration firm in effect on the date the arbitration is filed unless those procedures and rules are inconsistent with this Agreement, in which case this Agreement will prevail. Those procedures and rules may limit the discovery available to you or us. The arbitrator will take reasonable steps to protect customer account information and other confidential information if requested to do so by you or us. The arbitrator will apply applicable substantive law consistent with the FAA and applicable statutes of limitations, will honor claims of privilege recognized at law, and will have the power to award to a party any damages or other relief provided for under applicable law. You or we may choose to have a hearing and be represented by counsel. The arbitrator will make any award in writing and, if requested by you or us,

will provide a brief statement of the reasons for the award. An award in arbitration shall determine the rights and obligations between the named parties only, and only in respect of the Claims in arbitration, and shall not have any bearing on the rights and obligations of any other person, or on the resolution of any other dispute.

Who pays? Whoever files the arbitration pays the initial filing fee. If we file, we pay; if you file, you pay, unless you get a fee waiver under the applicable rules of the arbitration firm. If you have paid the initial filing fee and you prevail, we will reimburse you for that fee. If there is a hearing, we will pay any fees of the arbitrator and arbitration firm for the first day of that hearing. All other fees will be allocated as provided by the rules of the arbitration firm and applicable law. However, we will advance or reimburse your fees if the arbitration firm or arbitrator determines there is good reason for requiring us to do so, or at you ask us and we determine there is good reason for doing so. Each party will bear the expense of that party's attorneys, experts, and witnesses, and other expenses, regardless of which party prevails, but a party may recover any or all expenses from another party if the arbitrator, applying applicable law, so determines.

Who can be a party? Claims must be brought in the name of an individual person or entity and must proceed on an individual (non-class, non-representative) basis. The arbitrator will not award relief for or against anyone who is not a party. If you or we require arbitration of a Claim, neither you, we, nor any other person may pursue the Claim in arbitration as a class action, private attorney general action or other representative action, nor may such Claim be pursued on your or our behalf in any litigation in any court. Claims, including assigned Claims, of two or more persons may not be joined or consolidated in the same arbitration. However, applicants, co-applicants, authorized users on a single account and/or related accounts, or corporate affiliates are here considered as one person.

When is an arbitration award final? The arbitrator's award is final and binding on the parties unless a party appeals it in writing to the arbitration firm within fifteen days of notice of the award. The appeal must request a new arbitration before a panel of three neutral arbitrators designated by the same arbitration firm. The panel will consider all factual and legal issues anew, follow the same rules that apply to a proceeding using a single arbitrator, and make decisions based on the vote of the majority. Costs will be allocated in the same way they are allocated for arbitration before a single arbitrator. An award by a panel is final and binding on the parties after fifteen days has passed. A final and binding award is subject

12    13

to judicial review and enforcement as provided by the FAA or other applicable law.

### Survival and Severability of Terms

This arbitration provision shall survive: (i) termination or changes in the Agreement, the account, or the relationship between you and us concerning the account; (ii) the bankruptcy of any party; and (iii) any transfer, sale or assignment of your account, or any amounts owed on your account, to any other person or entity. If any portion of this arbitration provision is deemed invalid or unenforceable, the entire arbitration provision shall not remain in force. No portion of this arbitration provision may be amended, severed or waived absent a written agreement between you and us.

### Applicable Law and Enforcing our Rights

**Applicable Law:** The terms and enforcement of this Agreement shall be governed by federal law and the law of South Dakota, where we are located.

**Enforcing this Agreement:** We can delay in enforcing or fail to enforce any of our rights under this Agreement without losing them.

**Collection Costs:** If we refer collection of your account to a lawyer who is not our salaried employee, you are liable for any reasonable attorney's fees we incur, plus the costs and expenses of any legal action, to the extent permitted by law.

**Assignment:** We may assign any or all of our rights and obligations under this Agreement to a third party.

### For Further Information

Call the toll-free Customer Service telephone number shown on the billing statement or on the back of your card. You can also call local or toll-free Directory Assistance to get our telephone number.

Ken Stork
President & CEO

Citibank (South Dakota), N.A.
P.O. Box 6000
Sioux Falls, SD 57117

© 2006 Citibank (South Dakota), N.A.

### What To Do If There's An Error In Your Bill

**Your Billing Rights: Keep This Notice For Future Use.** This notice contains important information about your rights and our responsibilities under the Fair Credit Billing Act.

**Notify Us In Case of Errors or Questions About Your Bill.** If you think your billing statement is wrong, or if you need more information about a transaction on your billing statement, write to us (on a separate sheet) as soon as possible at the address provided in the Billing Rights Summary portion on the back of your statement. We must hear from you no later than 60 days after we sent you the first statement on which the error or problem appeared. You can telephone us, but doing so will not preserve your rights.

In your letter, give us the following information:
- Your name and account number.
- The dollar amount of the suspected error.
- Describe the error and explain, if you can, why you believe there is an error. If you need more information, describe the item you are unsure about.
- Please sign your letter.

If you authorized us to pay your credit card bill automatically from your savings or checking account, you can stop the payment on any amount you think is wrong. To stop the payment you must tell us at least three business days before the automatic payment is scheduled to occur.

**Your Rights and Our Responsibilities After We Receive Your Written Notice.** We must acknowledge your letter within 30 days, unless we have corrected the error by then. Within 90 days, we must either correct the error or explain why we believe your billing statement was correct. After we receive your letter, we cannot try to collect any amount you question, or report your account as delinquent. We can continue to bill you for the amount you question, including finance charges, and we can apply any unpaid amount against your credit line. You do not have to pay any questioned amount while we are investigating, but you are still obligated to pay the parts of your balance that are not in question.

If we find that we made a mistake on your billing statement, you will not have to pay any finance charges related to any questioned amount. If we didn't make a mistake, you may have to pay finance charges, and you will have to make up any missed payments on the questioned amount. In either case, we will send you a statement of the amount you owe and the date it is due.

If you fail to pay the amount that we think you owe, we may report you as delinquent. However, if our explanation does not satisfy you and you write to us within 10 days telling us that you still refuse to pay, we must tell anyone we report you to that you have a question about your bill. And, we must tell you the name and address of anyone to whom we reported your account information. We must tell anyone we report you to that the matter has been settled between us when it is finally settled.

If we don't follow these rules, we can't collect the first $50 of the questioned amount, even if your billing statement was correct.

**Special Rule for Credit Card Purchases.**
If you have a problem with the quality of property or services that you purchased with a credit card, and you have tried in good faith to correct the problem with the merchant, you may have the right not to pay the remaining amount due on the property or services. There are two limitations on this right:

- You must have made the purchase in your home state or, if not within your home state, within 100 miles of your current address; and
- The purchase price must have been more than $50.

These limitations do not apply if we own or operate the merchant, or if we mailed you the advertisement for the property or services.

© 2006 Citibank (South Dakota), N.A.

8049170U        Pr. 07/06   109060                        06/06

# EXHIBIT "C"

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
FIRST MUNICIPAL DISTRICT

| | |
|---|---|
| RESURGENCE FINANCIAL, LLC, an Illinois Limited Liability Company | ) |
| | ) Case No. |
| | ) |
| Plaintiff | ) |
| v. | ) |
| DIONISIA BARRERA | ) |
| | ) |
| Defendant(s). | ) |
| | ) |
| | ) |
| | ) |

AFFIDAVIT OF CLAIM

I, Eileen M. Mahon, an employee of Resurgence Financial, LLC, being first duly sworn upon my oath depose and state as follows:

1.    I am over the age of 21, under no legal disability, and if called and sworn as a witness in this cause, would testify that I have personal knowledge of the facts set forth in this petition.

2.    I am employed by Resurgence Financial, LLC, an Illinois Limited Liability Company ("Resurgence").

3.    Resurgence is proceeding in this matter on an assignment from UNIFUND.

4.    I am familiar with the account of DIONISIA BARRERA with Resurgence.

5.    I am familiar with the computer records of Resurgence and how to search the records of Resurgence to determine the status of accounts with our company.

6.    I have the authority to review the computer records of Resurgence.

7.    I have reviewed the records of Resurgence, which reflect that DIONISIA BARRERA was issued a credit card by CITIBANK SOUTH DAKOTA NA / CLASSIC, with an account number of ▓▓▓▓▓▓▓2504 and that the issuer, CITIBANK SOUTH DAKOTA NA / CLASSIC charged off said account on June 7, 2006, as a result of Defendant defaulting in making payments pursuant to the Cardmember Agreement.

8.    I have reviewed the computer records of Resurgence. There is a balance due to Resurgence on this account in the amount of $8,750.18 and Resurgence has not received payment.

| | |
|---|---|
| "OFFICIAL SEAL"<br>TRESSA I PECK<br>Notary Public, State of Illinois<br>My Commission Expires 11/4/2009 | FURTHER, THE AFFIANT SAYETH NAUGHT.<br><br>*Eileen M Mahon*<br>RESURGENCE FINANCIAL, LLC<br>By its duly authorized agent<br><br>EILEEN M. MAHON |

SUBSCRIBED AND SWORN TO
before me this _15th_ day of _April_ _20 08_.

_____
NOTARY PUBLIC

R0060514

STATE OF ILLINOIS

UNITED STATES OF AMERICA

COUNTY OF COOK

FIRST MUNICIPAL DISTRICT

RESURGENCE FINANCIAL, LLC, an Illinois
Limited Liability Company,

        Plaintiff

        v.

DIONISIA BARRERA

        Defendant(s)

CASE NUMBER

FILE STAMP HERE

## AFFIDAVIT TO MILITARY SERVICE

Resurgence Financial LLC, by its duly authorized agent, being first duly sworn upon my oath depose and states:

With respect to (each) defendant, DIONISIA BARRERA, ██████████ ██████████

☐    the Defendant is

☒    the Defendant is not

☐    I am unable to determine whether the Defendant is

in the military service of the United States of America.

This affidavit is based on these facts: I searched on the Department of Defense website: www.dmdc.osd.mil/scra/owa/home
and the report indicated that the Defendant (is) (is not) on active military duty.

"OFFICIAL SEAL"
TRESSA I PECK
Notary Public, State of Illinois
My Commission Expires 11/4/2009

Under penalties as provided by law pursuant to Section 1-109 of the Code of Civil
Procedure, the above signed certifies that the statements set forth in this instrument
are true and correct, except as to matters therein stated to be on the information and
belief and as to such matters the above signed certifies as aforesaid that s/he believes
the same to be true.

Sworn and Subscribed before me
this 15ᵗʰ day of April, 200__

NOTARY PUBLIC

EILEEN M. MAHON

RESURGENCE FINANCIAL, LLC
Legal Department
3100 Commercial Avenue
Northbrook, IL 60062
847/656-2200
41776

```
08CV3519
JUDGE PALLMEYER
MAGISTRATE JUDGE MASON

TC
```

# APPENDIX C

R0060819

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
FIRST MUNICIPAL DISTRICT

RESURGENCE FINANCIAL, LLC, an Illinois )
Limited Liability Company                )    Case No.
                                         )
                    Plaintiff            )    Amount Claimed: $1,298.04
                                         )
         v.                              )    Return Date:
                                         )
CHEYENNE FELTON                          )         JUN 9 2008
                    Defendant(s).        )
                                         )
                                         )
                                         )
                                         )

## VERIFIED COMPLAINT AT LAW

RESURGENCE FINANCIAL, LLC, an Illinois Limited Liability Company ("Plaintiff"), by and through one of

its staff attorneys, complains of CHEYENNE FELTON ("Defendant"), as follows:

1.      Pursuant to 735 ILCS 5/2-403, Plaintiff is proceeding in this cause as the Assignee of CITIBANK SOUTH

DAKOTA NA / CITI DIAMOND PREFERRED REWARDS ("CITIBANK SOUTH DAKOTA NA / CITI DIAMOND

PREFERRED REWARDS"), as set forth in the Bill of Sale attached hereto, made a part hereof and marked as Exhibit

"A".

2.      CITIBANK SOUTH DAKOTA NA / CITI DIAMOND PREFERRED REWARDS and Defendant entered into

a Cardmember Agreement ("Agreement"), wherein CITIBANK SOUTH DAKOTA NA / CITI DIAMOND PREFERRED

REWARDS issued a credit card account number ████████5220 to Defendant and Defendant agreed to pay all

amounts charged by the use if the card. A copy of the Agreement containing the terms and conditions governing the use

of the credit card is attached hereto, made a part here of and marked as Exhibit "B".

3.      Defendant resides in the State of Illinois.

4.      Thereafter, Defendant incurred charges by use of the credit card.

5.      As set forth in the Affidavit of Plaintiff, attached hereto, made a part hereof and marked as Exhibit "C", there

is now due and owing from Defendant to Plaintiff the sum of $1,298.04, of which no part has been paid, although duly

demanded.

WHEREFORE, Plaintiff, Resurgence Financial, LLC, an Illinois Limited Liability Company, demands a judgment against the Defendant(s) CHEYENNE FELTON, in the sum of $1,298.04, plus court costs.

Respectfully Submitted,

RESURGENCE FINANCIAL, LLC,
an Illinois Limited Liability Company,
Plaintiff herein,

_____
By One of Its Staff Attorneys
Conrad Noll IV, Esq.

## VERIFICATION

Under penalties as provided by law pursuant to Section 1-109 of the Code of Civil Procedure, the undersigned certifies that the statements set forth in this instrument are true and correct, except as to matters therein stated to be on information an belief, and as to such matters the undersigned certifies as aforesaid that s/he verily believes the same to be true.

_____
RESURGENCE FINANCIAL, LLC
By One of Its Attorneys
Conrad Noll IV, Esq.

RESURGENCE FINANCIAL, LLC
Legal Department
4100 Commercial Avenue
Northbrook, IL 60062
847/656-2200
Firm No. 41776

# EXHIBIT "A"

## BILL OF SALE, ASSIGNMENT AND ASSUMPTION AGREEMENT

THIS BILL OF SALE, ASSIGNMENT AND ASSUMPTION AGREEMENT is dated as of November 29, 2007, between Citibank (South Dakota), N.A., a national banking association organized under the laws of the United States, located at 701 East 60th Street North, Sioux Falls, SD 57117 (the "Bank") and Unifund Portfolio A, LLC ("Buyer"), with its headquarters/principal place of business at 10625 Techwoods Circle, Cincinnati, OH 45242.

For value received and subject to the terms and conditions of the Purchase and Sale Agreement dated November 29, 2007, between Buyer and the Bank (the "Agreement"), the Bank does hereby transfer, sell, assign, convey, grant, bargain, set over and deliver to Buyer, and to Buyer's successors and assigns, all of the Bank's right, title and interest in and to the Accounts described in Section 1.2 of the Agreement.

Except as provided for in the Agreement, this Bill of Sale, Assignment and Assumption Agreement is executed without recourse and without representations or warranties including, without limitation, warranties as to collectibility.

Citibank (South Dakota), N.A.

By: _____
             (Signature)

Name:  Douglas C. Morrison

Title:  Vice President & CFO


Unifund Portfolio A, LLC

By: _____
             (Signature)

Name: Henry N. Thomas

Title: Vice President



Unifund CCR Partners

BILL OF SALE

Unifund CCR Partners, for value received and in accordance with the terms of the Accounts Receivable Purchase Agreement by and among Unifund CCR Partners and Resurgence Financial, LLC ("Purchaser"), dated as of March 4th, 2008 (the "Agreement"), does hereby sell, assign, and transfer to Purchaser all of its good and marketable title, free and clean of all liens, claims and encumbrances in and to the Accounts listed in the Account Schedule attached as Appendix A to the Agreement, without recourse and without representation or warranty of collectibility, or otherwise, except to the extent stated in the Agreement.

Executed on March 4th, 2008.

UNIFUND CCR PARTNERS

By
Joel Rosenthal
Director, Sales and Marketing

23

**AFFIDAVIT**

I, Joel Rosenthal, as Director of Sales and Marketing, for the Unifund Group, being duly sworn, deposes, and says:

1. Unifund CCR Partners is a New York General Partnership, and is the operating company for the Unifund Group.

2. Unifund Portfolio A, LLC is an Ohio limited liability company.

3. Unifund CCR Partners and Unifund Portfolio A, LLC share 100% common ownership.

4. Unifund Portfolio A, LLC purchased various portfolios of accounts from multiple sellers.

5. In accordance with a Servicing Agreement between Unifund CCR Partners and Unifund Portfolio A, LLC dated July 6, 2001; Unifund CCR Partners has the right and authority to sell accounts on behalf of Unifund Portfolio A, LLC.

6. Pursuant to such right and authority, Unifund CCR Partners sold a portfolio of 1897 accounts to Resurgence Financial, LLC via a Purchase Agreement and Bill of Sale dated March 10, 2008, on behalf of Unifund Portfolio A, LLC.

**Further Affiant Sayeth Not.**

Joel Rosenthal
Director of Sales and Marketing
Unifund CCR Partners

I do certify that the above sworn statement was duly taken and subscribed in my presence, this ___17th___ day of ___March___, 2007.

Notary Public

JENNIFER A DUNCAN
NOTARY PUBLIC
STATE OF OHIO
Comm. Expires
July 04, 2012

# EXHIBIT "B"

# CARD AGREEMENT

This Card Agreement, which includes your card carrier, is your contract with us and governs the use of your card and account. The card carrier contains important account information, including your annual percentage rates and the amount of any membership fee. Please read and keep these documents for your records.

### FACTS ABOUT RATES AND FEES

For complete information about these facts, please see the related sections in this Card Agreement.

## RATES—FINANCE CHARGES

**Purchase and Cash Advance APRs:** See card carrier. All APRs based on the Prime Rate may vary each billing period. **Default APR:** See card carrier. The Default APR equals the Prime Rate plus up to 23.99%, or up to 28.99%, whichever is greater. All APRs may automatically increase up to the Default APR if you fail to make a payment to us when due, exceed your credit line, or make a payment to us that is not honored.

**Minimum Finance Charge:** $0.50.

## TRANSACTION FEES—FINANCE CHARGES

**Balance Transfer Fee:** 3% of each balance transfer, $5 minimum, $75 maximum.

**Purchases Made in a Foreign Currency Fee:** 3% of each purchase after its conversion into U.S. dollars.

**Cash Advance Fee:** 3% of each cash advance, $5 minimum.

## OTHER FEES

**Late Fee:** $15 on balances up to $100; $29 on balances of $100 up to $250; $39 on balances of $250 and over.

**Over-the-Credit-Line Fee:** $39.

**Annual Membership Fee:** See card carrier.

**Returned Payment Fee:** $39.

**Returned Convenience Check Fee:** $39.

**Stop Payment on Convenience Check Fee:** $39.

**Rates, fees, and terms may change.** We may change the rates, fees, and terms of your account at any time for any reason. These reasons may be based on information in your credit report, such as your failure to make payments to another creditor when due, amounts owed to other creditors, the number of credit accounts outstanding, or the number of credit inquiries. These reasons may also include competitive or market-related factors. If we make a change for any of these reasons, you will receive advance notice and a right to opt out in accordance with applicable law.

## Definitions

*account:* the relationship established between you and us by this Card Agreement.

*APR:* annual percentage rate.

*authorized user:* any person you allow to use your account.

*card:* one or more cards or other account access devices, including account numbers, that we issue to you to obtain credit under this Card Agreement.

*Card Agreement (or Agreement):* this document and the card carrier.

*we, us, and our:* Citibank (South Dakota), N.A., the issuer of your account.

*you, your, and yours:* the person who applied to open the account and any other person responsible for complying with this Agreement, including the person to whom we address billing statements.

## Your Account

You agree to use your account in accordance with this Agreement. This Agreement is binding on you unless you cancel your account within 30 days after receiving the card and you have not used or authorized use of the card. You must pay us for all amounts due on your account as specified in this Agreement. Your account must only be used for lawful transactions.

**Authorized Users:** You may allow authorized users to use your account. You may request additional cards for authorized users. You must pay us for all charges made by authorized users even if you did not intend to be responsible for those charges. You must notify us to revoke any permission you give to an authorized user to use a card or to use your account.

**Credit Line:** Your initial credit line appears on the card carrier. The full amount of your credit line is available to buy or lease goods or services where the card is honored. Part of your credit line, called the cash advance limit, is available for cash advances. We may change your credit line or cash advance limit at any time for any reason. We will notify you of any change, but the change may take effect before you receive the notice. The total balance on your account, including periodic finance charges and fees, must always remain below the credit line. However, if the total balance exceeds your credit line you must still pay us. If your account has a credit balance, we may reduce the credit balance by any new charges on your account. You may not maintain a credit balance in excess of your credit line.

**Billing Statement:** Your billing statement shows the total balance, periodic finance charges, fees, minimum amount

due, and payment due date. It also shows your current credit line and cash advance limit, an itemized list of current charges, payments and credits, a rate summary, and other important information. We deliver a statement to only one address. You must notify Customer Service of a change in address. If we deem your account uncollectible or institute collection proceedings by sending it to an outside agency or attorney for collection, we may stop sending you statements. Periodic finance charges and fees continue to accrue even if we stop sending statements.

The total amount you owe us appears as the New Balance on the billing statement. To determine the New Balance we begin with the total balance at the start of the billing period. We add any purchases or cash advances and subtract any credits or payments credited as of that billing period. We then add any periodic finance charges or fees and make other adjustments.

## APRs

**APRs Based on Prime:** We calculate any APR based on the U.S. Prime Rate ("Prime Rate") by adding the applicable amount that appears on the card carrier to the Prime Rate. For each billing period we use the Prime Rate published in *The Wall Street Journal* two business days prior to the Statement/Closing Date for that billing period. If *The Wall Street Journal* does not publish the Prime Rate, we may substitute a similar published rate. A change in an APR due to a change in the Prime Rate takes effect as of the first day of the billing period for which we calculate the APR. We apply the new applicable APR to any existing balances, subject to any promotional rate that may apply.

**Default Rate:** All your APRs may increase if you default under any Card Agreement that you have with us because you fail to make a payment to us when due, you exceed your credit line, or you make a payment to us that is not honored. In these circumstances, we may automatically increase your APRs (including any promotional APRs) on all balances to the Default APR, which equals the Prime Rate plus up to 23.99%, or up to 28.99%, whichever is greater. Factors considered in determining your Default APR may include how long your account has been open, the timing or seriousness of a default under any Card Agreement that you have with us, or other indications of account performance. The Default APR takes effect as of the first day of the billing period in which you default. We may lower the APR for new purchases and/or cash advances if you meet the terms of all Card Agreements that you have with us for six consecutive billing periods. Existing balances remain subject to the Default APR until paid in full, unless we tell you otherwise.

**Effect of APR Increases:** If an APR increases, periodic finance charges increase and your minimum payment may increase.

## Periodic Finance Charges Based On APRs

**Periodic Finance Charges:** Periodic finance charges are finance charges that are added to your account when we apply the applicable APR to the balances on your account. We calculate periodic finance charges separately for each balance subject to different terms, for example, standard purchases, standard cash advances, and each promotional offer. The total periodic finance charge for the billing period equals the daily periodic finance charges for each balance for each day in the billing period. This method of calculating periodic finance charges results in daily compounding of finance charges.

**When Periodic Finance Charges Begin to Accrue:** Periodic finance charges begin to accrue on a charge from the date it is added to the daily balance and continue to accrue until payment in full is credited to your account. (Charges include purchases, balance transfers, cash advances, transaction fees, other fees, and any minimum finance charge.) You can avoid periodic finance charges on purchases (excluding balance transfers) that appear on your current billing statement if you paid the New Balance on the last statement by the payment due date on that statement and you pay your New Balance by the payment due date on your current statement. If you made a balance transfer, you may be unable to avoid periodic finance charges on new purchases, as described in the balance transfer offer.

**Calculation of Periodic Finance Charges:**

• For each balance, we multiply the daily balance by the applicable daily periodic rate. We do this for each day in the billing period. A daily periodic rate is the applicable APR divided by 365. A billing period begins on the day after the Statement/Closing Date of the previous billing period and includes the Statement/Closing Date of the current billing period.

• To get the daily balance, we take the beginning balance for each balance every day (including unpaid periodic finance charges from previous billing periods), add any new charges, and any periodic finance charge on the previous day's balance, subtract any credits or payments credited as of that day, and make other adjustments. A credit balance is treated as a balance of zero.

• We add a charge to the daily balance as follows: We add a purchase to the appropriate balance as of the Sale Date on the billing statement. We add a balance transfer or cash advance to the appropriate balance as of the Post Date on the statement. We add any transaction fees for purchases,

balance transfers, or cash advances to the same balance as the transaction as of the same date the transaction is added to the daily balance. The Post Date is the date we receive your request for the balance transfer or cash advance, including a request that we complete a balance transfer or cash advance convenience check for a specific amount. If you send a balance transfer or convenience check directly to someone, the Post Date is the date we receive the check for payment.

• To get the total periodic finance charge, we add up all of the daily periodic finance charges for each balance for each day in the billing period.

• For each balance, the Balance Subject to Finance Charge on the statement is the average of the daily balances during the billing period. If you multiply this figure for each balance by the number of days in the billing period and by the applicable daily periodic rate, the result is the periodic finance charges assessed for that balance, except for minor variations caused by rounding.

**Minimum Finance Charge:** If the periodic rate finance charge would otherwise be less than $0.50, we assess a minimum FINANCE CHARGE of $0.50. We add the amount to any balance that is assessed a finance charge.

## Transaction Fees

**Transaction Fees and APRs:** If you are assessed a transaction fee for a balance transfer, a purchase made in a foreign currency, or a cash advance, the transaction fee will cause the APR on the billing statement on which the transaction first appears to exceed your nominal APR.

**Transaction Fee for Balance Transfers:** You obtain a balance transfer if you obtain funds through a balance transfer check or transfer a balance without using a cash advance convenience check. We treat balance transfers as purchases unless otherwise provided in this Agreement. For each balance transfer we add an additional FINANCE CHARGE of 3% of the amount of the balance transfer, but not less than $5 or more than $75.

**Transaction Fee for Purchases Made in a Foreign Currency:** For each purchase made in a foreign currency we add an additional FINANCE CHARGE of 3% of the purchase amount after its conversion into U.S. dollars.

**Transaction Fee for Cash Advances:** You obtain a cash advance if you obtain funds through an automated teller machine (ATM), convenience check, home banking, or financial institution; make a wire transfer; obtain a money order, traveler's check, lottery ticket, casino chip, or similar item; or engage in a similar transaction. For each cash

4

5

advance we add an additional **FINANCE CHARGE** of 3% of the amount of the cash advance, but not less than $5.

## Other Fees

**Late Fee:** We add a late fee to the standard purchase balance for each billing period you fail to pay, by its due date, the Minimum Amount Due (less the Amount Over Credit Line shown on your billing statement). This fee is based on your account balance as of the payment due date. It is: $15 on balances up to $100, $29 on balances of $100 up to $250, and $39 on balances of $250 and over.

**Over-the-Credit-Line Fee:** We add a $39 fee to the standard purchase balance if your account balance exceeds your credit line at any time during the billing period. We add this fee even if transactions we authorize or periodic finance charges, fees, and other charges you incur are a reason the account balance exceeds your credit line. We add this fee even if the account balance falls below your credit line by the end of the billing period.

**Annual Membership Fee:** We add any applicable annual membership fee to the standard purchase balance. This fee is non-refundable unless you notify us to cancel your account within 30 days of the mailing or delivery date of the billing statement on which the fee is billed.

**Returned Payment Fee:** We add a $39 fee to the standard purchase balance if a payment check or similar instrument is not honored or is returned because it cannot be processed, or if an automatic debit is returned unpaid. We assess this fee the first time your check or payment is not honored, even if it is honored upon resubmission.

**Returned Convenience Check Fee:** We add a $39 fee to the standard advance balance if we decline to honor a convenience check. We may decline to honor these checks if, for example, the amount of the check would cause the balance to exceed the cash advance limit or credit line, if you default, if you did not comply with our instructions regarding the check, or if your account has been closed.

**Stop Payment on Convenience Check Fee:** We add a $39 fee to the standard advance balance if we honor your request to stop payment on a convenience check. To stop payment on a convenience check write us at P.O. Box 6500, Sioux Falls, South Dakota 57117, or call the Customer Service number on the billing statement. If you call, you must confirm the call in writing within 14 days. A written stop payment order remains in effect for 6 months unless renewed in writing.

**Balance Transfer Checks and Convenience Checks:** Each check must be in the form it was issued and used according

to any instructions we give. The checks must not be used to pay an amount owed us under this or another Card Agreement that you have with us. We do not certify these checks or return any such checks that have been paid.

## Information on Foreign Currency Conversion Procedures

If you make a transaction in a foreign currency, other than a cash advance made at a branch or ATM of one of our affiliates, MasterCard, Visa or American Express, depending on which card is used, converts the amount into U.S. dollars as follows:

- MasterCard complies with its foreign currency conversion procedures then in effect. MasterCard currently uses a conversion rate in effect one day prior to its transaction processing date. Such rate is either a wholesale market rate or the government-mandated rate.
- Visa complies with its foreign currency conversion procedures then in effect. Visa currently uses a conversion rate in effect on its applicable central processing date. Such rate is either a rate it selects from the range of rates available in wholesale currency markets, which may vary from the rate it receives, or the government-mandated rate.
- American Express complies with its foreign currency conversion procedures then in effect. Unless a particular rate is required by applicable law, the rate used by American Express shall be the highest interbank rate selected on the business day prior to the day on which the transaction is processed by American Express.

If a cash advance is made in a foreign currency at a branch or ATM of one of our affiliates, the amount is converted into U.S. dollars by our affiliate in accordance with its foreign currency conversion procedures then in effect. Our affiliate currently uses a conversion rate in effect on its applicable processing date. Such rate is either a mid-point market rate or the government-mandated rate.

The foreign currency conversion rate in effect on the applicable processing date for a transaction may differ from the rate in effect on the Sale or Post date on your billing statement for that transaction.

If a transaction is converted by a third party prior to such transaction being processed by MasterCard, Visa, or American Express, the foreign currency conversion rate for that transaction will be the rate selected by that third party.

## Payments

**Minimum Amount Due:** Each month you must pay at least the Minimum Amount Due by the payment due date. The

sooner you pay the New Balance, the less you will pay in periodic finance charges.

To calculate the Minimum Amount Due, we begin with any past due amount and add any amount in excess of your credit line. We then add the largest of the following:

- The New Balance on the billing statement if it is less than $20;
- $20 if the New Balance is at least $20;
- 1% of the New Balance (which calculation is rounded down to the nearest dollar) plus the amount of your billed finance charges and any applicable late fee; or
- 1.5% of the New Balance (which calculation is rounded down to the nearest dollar)

However, the Minimum Amount Due never exceeds the New Balance. In calculating the Minimum Amount Due, we may subtract from the New Balance certain fees added to your account during the billing period.

**Application of Payments:** We apply payments and credits to low APR balances before higher APR balances. That means your savings will be reduced if you make transactions that are subject to higher APRs.

**Payment Instructions:** Payments are credited in accordance with the payment instructions on the billing statement. You must pay us in U.S. dollars using a check, similar instrument, or automatic debit that is drawn on and honored by a bank in the U.S. Do not send cash. We can accept late or partial payments, and payments that reflect "paid in full" or other restrictive endorsements, without losing our rights. We reserve the right to accept payments made in foreign currency and instruments drawn on funds on deposit outside the U.S. If we do, we select the currency conversion rate at our discretion and credit your account in U.S. dollars after deducting any costs incurred in processing your payment, or we may bill you separately for such costs.

**Optional Pay by Phone Service:** You may request to make your payment by phone using our optional Pay by Phone Service. Each time you make such a request, you agree to pay us the amount shown in the Pay by Phone section on the back of the billing statement. Our representatives are trained to tell you this amount if you decide to use this optional Pay by Phone Service.

## Credit Reporting

We may report information about your account to credit reporting agencies. Late payments, missed payments, or other defaults on your account may appear on your credit report. If you request cards on your account for others, we may report account information in the names of those other

people as well. We may also obtain follow-up credit reports on you (for example, when we review your account for a credit line increase). If you wish to know which agencies we contacted, write us at the Customer Service address on the billing statement.

If you think we reported erroneous information to a credit reporting agency, write us at the Customer Service address on the billing statement. We will promptly investigate the matter and if we agree with you, we will contact each credit reporting agency to which we reported and request a correction. If, after our investigation, we disagree with you, we will tell you in writing or by telephone and tell you how to submit a statement to those agencies for inclusion in your credit report.

## Changes to this Agreement

We may change the rates, fees and terms of this Agreement at any time for any reason. These reasons may be based on information in your credit report, such as your failure to make payments to another creditor when due, amounts owed to other creditors, the number of credit accounts outstanding, or the number of credit inquiries. These reasons may also include competitive or market-related factors. Changing terms includes adding, replacing, or deleting provisions relating to your account and to the nature, extent, and enforcement of the rights and obligations you or we have relating to this Agreement. These changes are binding on you. However, if the change will cause a fee, rate or minimum payment to increase, we will mail you written notice at least 15 days before the beginning of the billing period in which the change becomes effective. If you do not agree to the change, you must notify us in writing within 25 days after the effective date of the change and pay us the total balance, either at once or under the terms of the unchanged Agreement. Unless we notify you otherwise, use of the card after the effective date of the change shall be deemed acceptance of the new terms, even if the 25 days have not expired.

## Default

You default under this Agreement if you fail to pay the Minimum Amount Due by its due date; exceed your credit line; pay by a check or similar instrument that is not honored or that we must return because it cannot be processed; pay by automatic debit that is returned unpaid; file for bankruptcy; or default under any other Card Agreement that you have with us. If you default, we may close your account and demand immediate payment of the total balance. If you gave us a security interest in a Certificate of Deposit, we may use the deposit amount to pay any amount you owe.

## Refusal of the Card, Closed Accounts, and Related Provisions

**Refusal of the Card:** We do not guarantee approval of transactions and are not liable for transactions that are not approved, either by us or by a third party, even if you have sufficient credit available. We may limit the number of transactions that may be approved in one day. If we detect unusual or suspicious activity, we may suspend your credit privileges until we can verify the activity.

**Preauthorized Charges:** If you default, if the card is lost or stolen, or we change your account for any reason, we may suspend automatic charges with third party vendors, if preauthorized charges are suspended, you are responsible for making direct payment for such charges until you contact the third party to reinstate the automatic charges.

**Lost or Stolen Cards, Account Numbers, or Convenience and Balance Transfer Checks:** If any card, account number, or check is lost or stolen or if you think someone used or may use them without permission, call us at the Customer Service number on the billing statement or the number obtained by calling toll-free or local Directory Assistance. We may require you to provide certain information in writing to help us find out what happened and to comply with our investigation. You must identify for us the charges that were not made by you, or someone authorized by you, and from which you received no benefit.

**Closing Your Account:** You may close your account by notifying us in writing or by calling toll-free at the Customer Service number shown on the billing statement or on the back of your credit card, but must still repay the total balance in accordance with this Agreement. We may close your account or suspend account privileges at any time for any reason without prior notice. We may also reissue a different card at any time. You must return any card to us upon request.

**Security Interest for Secured Accounts:** If your account is a secured account, you gave us a security interest in a Certificate of Deposit to secure repayment of your account. If you withdraw your funds from the Certificate of Deposit, we will close your account.

## ARBITRATION

*PLEASE READ THIS PROVISION OF THE AGREEMENT CAREFULLY. IT PROVIDES THAT ANY DISPUTE MAY BE RESOLVED BY BINDING ARBITRATION. ARBITRATION REPLACES THE RIGHT TO GO TO COURT, INCLUDING THE RIGHT TO A JURY AND THE RIGHT TO PARTICIPATE IN A CLASS ACTION OR SIMILAR PROCEEDING. IN ARBITRATION,*

10

A DISPUTE IS RESOLVED BY AN ARBITRATOR INSTEAD OF A JUDGE OR JURY. ARBITRATION PROCEDURES ARE SIMPLER AND MORE LIMITED THAN COURT PROCEDURES.

*Agreement to Arbitrate:* Either you or we may, without the other's consent, elect mandatory, binding arbitration for any claim, dispute, or controversy between you and us (called "Claims").

### Claims Covered

**What Claims are subject to arbitration?** All Claims relating to your account, a prior related account, or our relationship are subject to arbitration, including Claims regarding the application, enforceability, or interpretation of this Agreement and this arbitration provision. All Claims are subject to arbitration, no matter what legal theory they are based on or what remedy (damages, or injunctive or declaratory relief) they seek. This includes Claims based on contract, tort (including intentional tort), fraud, agency, your or our negligence, statutory or regulatory provisions, or any other sources of law; Claims made as counterclaims, cross-claims, third-party claims, interpleaders or otherwise; and Claims made independently or with other claims. A party who initiates a proceeding in court may elect arbitration with respect to any Claim advanced in that proceeding by any other party. Claims and remedies sought as part of a class action, private attorney general or other representative action are subject to arbitration on an individual (non-class, non-representative) basis, and the arbitrator may award relief only on an individual (non-class, non-representative) basis.

**Whose Claims are subject to arbitration?** Not only ours and yours, but also Claims made by or against anyone connected with us or you or claiming through us or you, such as a co-applicant or authorized user of your account, an employee, agent, representative, affiliated company, predecessor or successor, heir, assignee, or trustee in bankruptcy.

**What time frame applies to Claims subject to arbitration?** Claims arising in the past, present, or future, including Claims arising before the opening of your account, are subject to arbitration.

**Broadest Interpretation.** Any questions about whether Claims are subject to arbitration shall be resolved by interpreting this arbitration provision in the broadest way the law will allow it to be enforced. This arbitration provision is governed by the Federal Arbitration Act (the "FAA").

**What about Claims filed in Small Claims Court?** Claims filed in a small claims court are not subject to arbitration, so long as the matter remains in such court and advances only an individual (non-class, non-representative) Claim.

11

## How Arbitration Works

**How does a party initiate arbitration?** The party filing an arbitration must choose one of the following two arbitration firms and follow its rules and procedures for initiating and pursuing an arbitration: American Arbitration Association or National Arbitration Forum. Any arbitration hearing that you attend will be held at a place chosen by the arbitration firm in the same city as the U.S. District Court closest to your then current billing address, or at some other place to which you and we agree in writing. You may obtain copies of the current rules of each of the arbitration firms and forms and instructions for initiating an arbitration by contacting them as follows:

> American Arbitration Association
> 335 Madison Avenue, Floor 10
> New York, NY 10017-4605
> Web site: www.adr.org
> National Arbitration Forum
> P.O. Box 50191
> Minneapolis, MN 55405
> Web site: www.arbitration-forum.com

At any time you or we may ask an appropriate court to compel arbitration of Claims, or to stay the litigation of Claims pending arbitration, even if such Claims are part of a lawsuit, unless a trial has begun or a final judgment has been entered. Even if a party fails to exercise these rights at any particular time, or in connection with any particular Claims, that party can still require arbitration at a later time or in connection with any other Claims.

**What procedures and law are applicable in arbitration?** A single, neutral arbitrator will resolve Claims. The arbitrator will be either a lawyer with at least ten years experience or a retired or former judge, selected in accordance with the rules of the arbitration firm. The arbitration will follow procedures and rules of the arbitration firm in effect on the date the arbitration is filed unless those procedures and rules are inconsistent with this Agreement, in which case this Agreement will prevail. Those procedures and rules may limit the discovery available to you or us. The arbitrator will take reasonable steps to protect customer account information and other confidential information if requested to do so by you or us. The arbitrator will apply applicable substantive law consistent with the FAA and applicable statutes of limitations, will honor claims of privilege recognized at law, and will have the power to award to a party any damages or other relief provided for under applicable law. You or we may choose to have a hearing and be represented by counsel. The arbitrator will make any award in writing and, if requested by you or us,

will provide a brief statement of the reasons for the award. An award in arbitration shall determine the rights and obligations between the named parties only, and only in respect of the Claims in arbitration, and shall not have any bearing on the rights and obligations of any other person, or on the resolution of any other dispute.

**Who pays?** Whoever files the arbitration pays the initial filing fee. If we file, we pay; if you file, you pay, unless you get a fee waiver under the applicable rules of the arbitration firm. If you have paid the initial filing fee and you prevail, we will reimburse you for that fee. If there is a hearing, we will pay any fees of the arbitrator and arbitration firm for the first day of that hearing. All other fees will be allocated as provided by the rules of the arbitration firm and applicable law. However, we will advance or reimburse your fees if the arbitration firm or arbitrator determines there is good reason for requiring us to do so, or if you ask us and we determine there is good reason for doing so. Each party will bear the expense of that party's attorneys, experts, and witnesses, and other expenses, regardless of which party prevails, but a party may recover any or all expenses from another party if the arbitrator, applying applicable law, so determines.

**Who can be a party?** Claims must be brought in the name of an individual person or entity and must proceed on an individual (non-class, non-representative) basis. The arbitrator will not award relief for or against anyone who is not a party. If you or we require arbitration of a Claim, neither you, we, nor any other person may pursue the Claim in arbitration as a class action, private attorney general action or other representative action, nor may such Claim be pursued on your or our behalf in any litigation in any court. Claims, including assigned Claims, of two or more persons may not be joined or consolidated in the same arbitration. However, applicants, co-applicants, authorized users on a single account and/or related accounts, or corporate affiliates are here considered as one person.

**When is an arbitration award final?** The arbitrator's award is final and binding on the parties unless a party appeals it in writing to the arbitration firm within fifteen days of notice of the award. The appeal must request a new arbitration before a panel of three neutral arbitrators designated by the same arbitration firm. The panel will consider all factual and legal issues anew, follow the same rules that apply to a proceeding using a single arbitrator, and make decisions based on the vote of the majority. Costs will be allocated in the same way they are allocated for arbitration before a single arbitrator. An award by a panel is final and binding on the parties after fifteen days has passed. A final and binding award is subject

12

13

to judicial review and enforcement as provided by the FAA or other applicable law.

### Survival and Severability of Terms

This arbitration provision shall survive: (i) termination or changes in the Agreement, the account, or the relationship between you and us concerning the account; (ii) the bankruptcy of any party; and (iii) any transfer, sale or assignment of your account, or any amounts owed on your account, to any other person or entity. If any portion of this arbitration provision is deemed invalid or unenforceable, the entire arbitration provision shall not remain in force. No portion of this arbitration provision may be amended, severed or waived absent a written agreement between you and us.

### Applicable Law and Enforcing our Rights

**Applicable Law:** The terms and enforcement of this Agreement shall be governed by federal law and the law of South Dakota, where we are located.

**Enforcing this Agreement:** We can delay in enforcing or fail to enforce any of our rights under this Agreement without losing them.

**Collection Costs:** If we refer collection of your account to a lawyer who is not our salaried employee, you are liable for any reasonable attorney's fees we incur, plus the costs and expenses of any legal action, to the extent permitted by law.

**Assignment:** We may assign any or all of our rights and obligations under this Agreement to a third party.

### For Further Information

Call the toll-free Customer Service telephone number shown on the billing statement or on the back of your card. You can also call local or toll-free Directory Assistance to get our telephone number.

Ken Stork
President & CEO

Citibank (South Dakota), N.A.
P.O. Box 6000
Sioux Falls, SD 57117

© 2006 Citibank (South Dakota), N.A.

### What To Do if There's An Error in Your Bill

**Your Billing Rights. Keep This Notice For Future Use.**
This notice contains important information about your rights and our responsibilities under the Fair Credit Billing Act.

**Notify Us in Case of Errors or Questions About Your Bill.**
If you think your billing statement is wrong, or if you need more information about a transaction on your billing statement, write to us (on a separate sheet) as soon as possible at the address provided in the Billing Rights Summary portion on the back of your statement. We must hear from you no later than 60 days after we sent you the first statement on which the error or problem appeared. You can telephone us, but doing so will not preserve your rights.
In your letter, give us the following information:
- Your name and account number.
- The dollar amount of the suspected error.
- Describe the error and explain, if you can, why you believe there is an error. If you need more information, describe the item you are unsure about.
- Please sign your letter.
If you authorized us to pay your credit card bill automatically from your savings or checking account, you can stop the payment on any amount you think is wrong. To stop the payment you must tell us at least three business days before the automatic payment is scheduled to occur.

**Your Rights and Our Responsibilities After We Receive Your Written Notice.**
We must acknowledge your letter within 30 days, unless we have corrected the error by then. Within 90 days, we must either correct the error or explain why we believe your billing statement was correct. After we receive your letter, we cannot try to collect any amount you question, or report your account as delinquent. We can continue to bill you for the amount you question, including finance charges, and we can apply any unpaid amount against your credit line. You do not have to pay any questioned amount while we are investigating, but you are still obligated to pay the parts of your balance that are not in question.
If we find that we made a mistake on your billing statement, you will not have to pay any finance charges related to any questioned amount. If we didn't make a mistake, you may have to pay finance charges, and you will have to make up any missed payments on the questioned amount. In either case, we will send you a statement of the amount you owe and the date it is due.

14

15

If you fail to pay the amount that we think you owe, we may report you as delinquent. However, if our explanation does not satisfy you and you write to us within 10 days telling us that you still refuse to pay, we must tell anyone we report you to that you have a question about your bill. And, we must tell you the name and address of anyone to whom we reported your account information. We must tell anyone we report you to that the matter has been settled between us when it is finally settled.

If we don't follow these rules, we can't collect the first $50 of the questioned amount, even if your billing statement was correct.

### Special Rule for Credit Card Purchases.

If you have a problem with the quality of property or services that you purchased with a credit card, and you have tried in good faith to correct the problem with the merchant, you may have the right not to pay the remaining amount due on the property or services. There are two limitations on this right:

* You must have made the purchase in your home state or, if not within your home state, within 100 miles of your current address; and
* The purchase price must have been more than $50.

These limitations do not apply if we own or operate the merchant, or if we mailed you the advertisement for the property or services.

© 2006 Citibank (South Dakota), N.A.

# EXHIBIT "C"

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
FIRST MUNICIPAL DISTRICT

| | | |
|---|---|---|
| RESURGENCE FINANCIAL, LLC, an Illinois Limited Liability Company | ) | Case No. 08 M 1 137539 |
| | ) | |
| Plaintiff | ) | |
| v. | ) | |
| CHEYENNE FELTON | ) | |
| | ) | |
| Defendant(s). | ) | |
| | ) | |
| | ) | |
| | ) | |

AFFIDAVIT OF CLAIM

I, Eileen M. Mahon, an employee of Resurgence Financial, LLC, being first duly sworn upon my oath depose and state as follows:

1.     I am over the age of 21, under no legal disability, and if called and sworn as a witness in this cause, would testify that I have personal knowledge of the facts set forth in this petition.

2.     I am employed by Resurgence Financial, LLC, an Illinois Limited Liability Company ("Resurgence").

3.     Resurgence is proceeding in this matter on an assignment from UNIFUND.

4.     I am familiar with the account OF CHEYENNE FELTON with Resurgence.

5.     I am familiar with the computer records of Resurgence and how to search the records of Resurgence to determine the status of accounts with our company.

6.     I have the authority to review the computer records of Resurgence.

7.     I have reviewed the records of Resurgence, which reflect that CHEYENNE FELTON was issued a credit card by CITIBANK SOUTH DAKOTA NA / CITI DIAMOND PREFERRED REWARDS, with an account number of ██████████5220 and that the issuer, CITIBANK SOUTH DAKOTA NA / CITI DIAMOND PREFERRED REWARDS charged off said account on June 15, 2006, as a result of Defendant defaulting in making payments pursuant to the Cardmember Agreement.

8.     I have reviewed the computer records of Resurgence. There is a balance due to Resurgence on this account in the amount of $1,298.04 and Resurgence has not received payment.

FURTHER, THE AFFIANT SAYETH NAUGHT.

| |
|---|
| "OFFICIAL SEAL" |
| TRESSA I PECK |
| Notary Public, State of Illinois |
| My Commission Expires 11/4/2009 |

_Eileen M. Mahon_
RESURGENCE FINANCIAL, LLC
EILEEN M. MAHON

SUBSCRIBED AND SWORN TO
before me this 16 day of April , 20 08 .

_____
NOTARY PUBLIC

R0060819

UNITED STATES OF AMERICA

STATE OF ILLINOIS

COUNTY OF COOK

FIRST MUNICIPAL DISTRICT

RESURGENCE FINANCIAL, LLC, an Illinois
Limited Liability Company,

    Plaintiff

    v.

CHEYENNE FELTON

    Defendant(s)

CASE NUMBER

_____

FILE STAMP HERE

### AFFIDAVIT TO MILITARY SERVICE

Resurgence Financial LLC, by its duly authorized agent, being first duly sworn upon my oath depose and states:

With respect to (each) defendant, CHEYENNE FELTON, ███████████ ███████████ :

☐    the Defendant is

☒    the Defendant is not

☐    I am unable to determine whether the Defendant is

in the military service of the United States of America.

This affidavit is based on these facts:  I searched on the Department of Defense website:  www.dmdc.osd.mil/scra/owa/home
and the report indicated that the Defendant (is) (is not) on active military duty.

"OFFICIAL SEAL"
TRESSA I PECK
Notary Public, State of Illinois
My Commission Expires 11/4/2009

Under penalties as provided by law pursuant to Section 1-109 of the Code of Civil
Procedure, the above signed certifies that the statements set forth in this instrument
are true and correct, except as to matters therein stated to be on the information and
belief and as to such matters the above signed certifies as aforesaid that s/he believes
the same to be true.

Sworn and Subscribed before me
this 16 day of _____, 20 08

NOTARY PUBLIC

EILEEN M. MAHON

RESURGENCE FINANCIAL, LLC
Legal Department
4100 Commercial Avenue
Northbrook, IL 60062
847/656-2200
#41776