## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| MIRIAM S. MARTINEZ, | ) | |
| individually and on behalf of the classes | ) | |
| defined herein, | ) | 08 C 3519 |
| | ) | |
| Plaintiff, | ) | Judge Pallmeyer |
| | ) | |
| vs. | ) | Magistrate Judge Mason |
| | ) | |
| RESURGENCE FINANCIAL, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM IN SUPPORT OF
## PLAINTIFF'S PRELIMINARY MOTION FOR CLASS CERTIFICATION

Plaintiff has requested that this Court enter an order determining that this Fair Debt Collection Practices Act ("FDCPA") action may proceed as a class action against defendant Resurgence Financial, LLC ("Resurgence"). This memorandum is submitted in support of that motion.

## I.    NATURE OF THE CASE

This case concerns a standard practice used by defendant Resurgence in filing falsified and fraudulent documents in collection lawsuits brought to collect purported debts which it claims to have purchased.

On or about April 30, 2008, Resurgence filed suit against plaintiff Miriam S. Martinez in the Circuit Court of Cook County to collect a purported debt incurred for personal, family or household purposes. Resurgence Financial, LLC claimed to have purchased the debt, a Citibank South Dakota Dividend credit card that was charged off on January 19, 2006, and which would have become delinquent 180 days previously, or in July 2005.

The standard form complaint represented that "[a] copy of the Agreement containing the terms and conditions governing the use of the credit card is attached hereto, made a part hereof, and marked as Exhibit B." The complaint and exhibits are attached as <u>Appendix A</u>. Very close examination of the purported agreement reveals that it has revision dates of June 2006 and July

1

2006.

The purported contract is unsigned.  Resurgence alleged in the complaint that it became binding on the cardholder because "[t]hereafter," following receipt of the document "Defendant incurred charges by use of the credit card."  The purported agreement is identical to that attached to the Barrera and Felton complaints described below, even though (a) it is impossible that a document with a copyright date of 2006 and revision dates of June 2006 and July 2006 could govern a credit card which went into default in July 2005 and (b) Martinez, Barrera and Felton had different types of Citibank credit cards.

Because it paid so little for its "rights" that no genuine documentation was supplied, defendant Resurgence embarked upon a scheme to fraudulently pass off a false document as the agreement to which numerous debtors were parties.  Plaintiff was damaged as a result, in that she was required to retain counsel who had to analyze and deal with fictitious and fraudulent documents. The filing of collection lawsuits is regularly picked up and reported by credit bureaus.

Plaintiff complains that such practice violates the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692e, 1692e(2), and 1692e(10), the Illinois Collection Agency Act, 225 ILCS 425/9 (20) and (31), and the Illinois Consumer Fraud Act, 815 ILCS 505/2.  Plaintiff alleges that the filing of falsified and fraudulent documents in collection lawsuits violates the FDCPA as constituting a "false, deceptive, or misleading representation or means in connection with the collection of any debt" (§1692e), a false representation of the debt (§1692e(2)), and the use of a "false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer" (§1692e(10)) 1692e(10).  Plaintiff further contends that Resurgence violated 225 ILCS 425/9 (20) by "attempting or threatening to enforce a right or remedy without knowledge or reason to know that the right or remedy does not exist," and "[e]ngaging in dishonorable, unethical, or unprofessional conduct of a character likely to deceive, defraud, or harm the public."  225 ILCS 425/9 (31).  Finally, plaintiff contends that the same conduct constitutes an unfair practice within the meaning of the Illinois Consumer Fraud Act, 815 ILCS 505/2.

2

## OTHER EXAMPLES OF PRACTICE

### Dionisia Barrera

On or about May 1, 2008, Resurgence Financial, LLC filed suit against Dionisia Barrera in the Circuit Court of Cook County to collect a purported debt incurred for personal, family or household purposes.  Resurgence Financial, LLC claimed to have purchased the debt, a Citibank South Dakota Classic credit card that was charged off on June 7, 2006 and which would have become delinquent 180 days previously, or in December 2005.

The standard form complaint represented that "[a] copy of the Agreement containing the terms and conditions governing the use of the credit card is attached hereto, made a part hereof, and marked as Exhibit B."  The complaint and exhibits are attached as <u>Appendix B</u>.

The purported agreement is identical to that attached to the Martinez complaint, even though (a) it is impossible that a document with a copyright date of 2006 and revision dates of June 2006 and July 2006 could govern a credit card which went into default in December 2005 and (b) Barrera had a different type of credit card than Martinez.

### Cheyenne Felton

On or about May 3, 2008, Resurgence Financial, LLC filed suit against Cheyenne Felton in the Circuit Court of Cook County to collect a purported debt incurred for personal, family or household purposes.  Resurgence Financial, LLC claimed to have purchased the debt, a Citibank South Dakota Citidiamond Preferred credit card that was charged off on June 15, 2006 and which would have become delinquent 180 days previously, or in December 2005.

The standard form complaint represented that "[a] copy of the Agreement containing the terms and conditions governing the use of the credit card is attached hereto, made a part hereof, and marked as Exhibit B."  The complaint and exhibits are attached as <u>Appendix C</u>.

The purported agreement is identical to that attached to the Martinez and Barrera complaints, even though (a) it is impossible that a document with a copyright date of 2006 and revision dates of June 2006 and July 2006 could govern a credit card which went into default in

December 2005 and (b) Felton had a different type of credit card than Martinez and Barrera.

## II.    THE FAIR DEBT COLLECTION PRACTICES ACT

The FDCPA states that its purpose, in part, is "to eliminate abusive debt collection practices by debt collectors."  15 U.S.C. §1692(e).  It is designed to protect consumers from unscrupulous collectors, whether or not there is a valid debt.  Mace v. Van Ru Credit Corp., 109 F.3d 338 (7th Cir. 1997); Keele v. Wexler, 149 F.3d 589, 594 (7th Cir. 1998); Baker v. G.C. Services Corp., 677 F.2d 775, 777 (9th Cir. 1982); McCartney v. First City Bank, 970 F.2d 45, 47 (5th Cir. 1992).  The FDCPA broadly prohibits unfair or unconscionable collection methods; conduct which harasses, oppresses or abuses any debtor; and any false, deceptive or misleading statements, in connection with the collection of a debt; it also requires debt collectors to give debtors certain information.  15 U.S.C. §§1692d, 1692e, 1692f and 1692g.

In enacting the FDCPA, Congress recognized the:

> **universal agreement among scholars, law enforcement officials, and even debt collectors that the number of persons who willfully refuse to pay just debts is minuscule [sic]. . . .  [T]he vast majority of consumers who obtain credit fully intend to repay their debts.  When default occurs, it is nearly always due to an unforeseen event such as unemployment, overextension, serious illness, or marital difficulties or divorce.**

S. Rep. No. 382, 95th Cong., 1st Sess. 3 (1977), reprinted in 1977 USCCAN 1695, 1697.

The Seventh Circuit has held that whether a debt collector's conduct violates the FDCPA should be judged from the standpoint of an "unsophisticated consumer."  Avila v. Rubin, 84 F.3d 222 (7th Cir. 1996); Gammon v. GC Services, LP, 27 F.3d 1254 (7th Cir. 1994).  The standard is an objective one – whether the plaintiff or any class member was misled is not an element of a cause of action.  "The question is not whether these plaintiffs were deceived or misled, but rather whether an unsophisticated consumer would have been misled."  Beattie v. D.M. Collections, Inc., 754 F.Supp. 383, 392 (D. Del. 1991).

Because it is part of the Consumer Credit Protection Act, 15 U.S.C. §§1601 et seq., the FDCPA should be liberally construed in favor of the consumer to effectuate its purposes.  Cirkot v. Diversified Fin. Services, Inc., 839 F.Supp. 941 (D. Conn. 1993).

4

> **The [Consumer Credit Protection] Act is remedial in nature, designed to remedy what Congressional hearings revealed to be unscrupulous and predatory creditor practices throughout the nation. Since the statute is remedial in nature, its terms must be construed in liberal fashion if the underlying Congressional purpose is to be effectuated.**

N.C. Freed Co. v. Board of Governors, 473 F.2d 1210, 1214 (2d Cir. 1973).

Statutory damages are recoverable for violations, whether or not the consumer proves actual damages. Bartlett v. Heibl, 128 F.3d 497, 499 (7th Cir. 1997); Baker, 677 F.2d at 780-1; Woolfolk v. Van Ru Credit Corp., 783 F. Supp. 724, 727 and n. 3 (D. Conn. 1990); Cacace v. Lucas, 775 F. Supp. 502 (D. Conn. 1990); Riveria v. MAB Collections, Inc., 682 F. Supp. 174, 177 (W.D. N.Y. 1988); Kuhn v. Account Control Technol., 865 F. Supp. 1443, 1450 (D. Nev. 1994); In re Scrimpsher, 17 B.R. 999, 1016-7 (Bankr. N.D. N.Y. 1982); In re Littles, 90 B.R. 669, 680 (Bankr. E.D. Pa. 1988), aff'd as modified sub nom. Crossley v. Lieberman, 90 B.R. 682 (E.D. Pa. 1988), aff'd, 868 F.2d 566 (3d Cir. 1989).

The FDCPA encourages consumers to act as "private attorneys general" to enforce the public policies expressed therein. Crabill v. Trans Union, L.L.C., 259 F.3d 662, 666 (7th Cir. 2001); Baker, 677 F.2d at 780; Whatley v. Universal Collection Bureau, 525 F. Supp. 1204, 1206 (N.D. Ga. 1981). "Congress intended the Act to be enforced primarily by consumers...." FTC v. Shaffner, 626 F.2d 32, 35 (7th Cir. 1980). "Congress painted with a broad brush in the FDCPA to protect consumers from abusive and deceptive debt collection practices, and courts are not at liberty to excuse violations where the language of the statute clearly comprehends them...." Pipiles v. Credit Bureau of Lockport, Inc., 886 F.2d 22, 27 (2d Cir. 1989).

Plaintiff need not prove intent, bad faith or negligence in an FDCPA case. The "FDCPA is a strict liability statute," and "proof of one violation is sufficient to support summary judgment for the plaintiff." Cacace v. Lucas, 775 F. Supp. at 505. Accord, Turner v. J.V.D.B. & Associates, Inc., 330 F.3d 991, 995 (7th Cir. 2003); Gearing v. Check Brokerage Corp., 233 F.3d 469, 472 (7th Cir. 2000).

5

## III.     STANDARD FOR CLASS CERTIFICATION

Class actions are essential to enforce laws protecting consumers.  As the court stated in Eshaghi v. Hanley Dawson Cadillac Co., 214 Ill.App.3d 995, 574 N.E.2d 760 (1st Dist. 1991):

> **In a large and impersonal society, class actions are often the last barricade of consumer protection.  . . . To consumerists, the consumer class action is an inviting procedural device to cope with frauds causing small damages to large groups.  The slight loss to the individual, when aggregated in the coffers of the wrongdoer, results in gains which are both handsome and tempting.  The alternatives to the class action  -- private suits or governmental actions -- have been so often found wanting in controlling consumer frauds that not even the ardent critics of class actions seriously contend that they are truly effective.  The consumer class action, when brought by those who have no other avenue of legal redress, provides restitution to the injured, and deterrence of the wrongdoer.** (574 N.E.2d at 764, 766).

Congress expressly recognized the propriety of a class action under the FDCPA by providing special damage provisions and criteria in 15 U.S.C. §§1692k(a) and (b) for FDCPA class action cases.  As a result, numerous FDCPA class actions have been certified.  Keele v. Wexler & Wexler, 95 C 3483, 1996 WL 124452, 1996 U.S. Dist. LEXIS 3253 (N.D. Ill., Mar. 18, 1996), aff'd, 149 F.3d 589 (7th Cir. 1998); Avila v Van Ru Credit Corp., 94 C 3234, 1995 WL 683775, 1995 U.S. Dist. LEXIS 461 (N.D. Ill. 1995), aff'd, Avila v. Rubin, supra, 84 F.3d 222; Blarek v. Encore Receivable Mgmt., Inc., 2:06cv420, 2007 U.S. Dist. LEXIS 58182 (E.D. Wis., Aug. 8, 2007); Seeger v. AFNI, Inc., 2:05cv714, 2006 U.S. Dist. LEXIS 55709 (E.D. Wis., Aug. 9, 2006); Carroll v. United Compucred Collections, 1-99-0152 H/G, 2002 U.S. Dist. LEXIS 25032, *43-44 (M.D. Tenn., Nov. 15, 2002), adopted in pertinent part, 2003 U.S. Dist. LEXIS 5996 (M.D. Tenn., Mar. 31, 2003), aff'd, 399 F.3d 620 (6th Cir. 2005); Wahl v. Midland Credit Mgmt., 06 C 1708, 2007 U.S. Dist. LEXIS 39626, *14-15 (N.D. Ill., May 30, 2007); Carr v. Trans Union Corp., C.A. 94-22, 1995 WL 20865, 1995 U.S. Dist. LEXIS 567 (E.D. Pa. 1995) (FDCPA class certified regarding defendant Trans Union's transmission of misleading collection notices to consumers); Colbert v. Trans Union Corp., C.A. 93-6106, 1995 WL 20821, 1995 U.S. Dist. LEXIS 578 (E.D. Pa. 1995) (same); Gammon v. GC Services, L.P., 162 F.R.D. 313 (N.D. Ill. 1995) (similar); Zanni v. Lippold, 119 F.R.D. 32, 35 (C.D. Ill. 1988); West v. Costen, 558 F. Supp. 564, 572-573 (W.D. Va. 1983) (FDCPA class

certified regarding alleged failure to provide required "validation" notices and addition of unauthorized fees); Cheqnet Systems, Inc. v. Montgomery, 322 Ark. 742, 911 S.W.2d 956 (1995) (class certified in FDCPA action challenging bad check charges); Brewer v. Friedman, 152 F.R.D. 142 (N.D. Ill. 1993) (FDCPA class certified regarding transmission of misleading collection demands to consumers), earlier opinion, 833 F. Supp. 697 (N.D. Ill. 1993); Duran v. Credit Bureau of Yuma, Inc., 93 F.R.D. 607 (D. Ariz. 1982) (class certified in action complaining of unauthorized charges).

## IV.   THE PROPOSED CLASS MEETS THE REQUIREMENTS FOR CERTIFICATION

### A.   Rule 23(a)(1) – Numerosity

Fed.R.Civ.P. 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." "When the class is large, numbers alone are dispositive...." Riordan v. Smith Barney, 113 F.R.D. 60, 62 (N.D. Ill. 1986). Where the class numbers at least 40, joinder is generally considered impracticable. Cypress v. Newport News General & Nonsectarian Hosp. Ass'n, 375 F.2d 648, 653 (4th Cir. 1967) (18 sufficient); Swanson v. American Consumer Industries, 415 F.2d 1326, 1333 (7th Cir. 1969) (40 sufficient); Riordan, 113 F.R.D. 60 (10-29 sufficient); Philadelphia Electric Co. v. Anaconda American Brass Co., 43 F.R.D. 452, 463 (E.D. Pa. 1968) (25 sufficient); Sala v. National R. Pass. Corp., 120 F.R.D. 494, 497 (E.D. Pa. 1988) (40-50 sufficient); Scholes v. Stone, McGuire & Benjamin, 143 F.R.D. 181, 184 (N.D. Ill. 1992) (about 70 sufficient). It is not necessary that the precise number of class members be known. "A class action may proceed upon estimates as to the size of the proposed class." In re Alcoholic Beverages Litigation, 95 F.R.D. 321 (E.D. N.Y. 1982); Lewis v. Gross, 663 F. Supp. 1164, 1169 (E.D. N.Y. 1986).

The court may "make common sense assumptions in order to find support for numerosity." Evans v. United States Pipe & Foundry, 696 F.2d 925, 930 (11th Cir. 1983). "[T]he court may assume sufficient numerousness where reasonable to do so in absence of a contrary showing by defendant, since discovery is not essential in most cases in order to reach a class determination.... Where the exact size of the class is unknown, but it is general knowledge or

common sense that it is large, the court will take judicial notice of this fact and will assume joinder is impracticable." 2 <u>Newberg on Class Actions</u> (3d ed. 1992), §7.22.A.

For example, it is reasonable to infer numerosity from the use by a large collection agency of a standard form document. <u>Swiggett v. Watson</u>, 441 F. Supp. 254, 256 (D. Del. 1977) (in action challenging transfers of title pursuant to Delaware motor vehicle repairer's lien, fact that Department of Motor Vehicles issued printed form for such transfer in and of itself sufficient to show that numerosity requirement was satisfied); <u>Westcott v. Califano</u>, 460 F. Supp. 737, 744 (D. Mass. 1978) (in action challenging certain welfare policies, existence of policies and 148 families who were denied benefits to which policies applied sufficient to show numerosity, even though it was impossible to identify which of 148 families were denied benefits because of policies complained of); <u>Carr</u>, 1995 U.S. Dist. LEXIS 567 (FDCPA class certified regarding defendant Trans Union's transmission of misleading collection notices to consumers in which court inferred numerosity from the use of form letters); <u>Colbert</u>, 1995 U.S. Dist. LEXIS 578 (same); <u>Keele</u>, 1996 U.S. Dist. LEXIS 3253.

Here it is reasonable to infer that the number of class members exceeds the minimum necessary because:

a.    This action complains of a standard practice used by defendant;

b.    <u>Appendices A-C</u> represent standard form complaints;

c.    The purported agreement attached as <u>Exhibit B</u> to <u>Appendices A-C</u> are identical and represent form contracts frequently used by defendant in filing collection lawsuits irrespective of the identity or individual circumstances of the debtor;

d.    Just this year, defendant Resurgence Financial, LLC filed more than 1,000 cases in Illinois alone. (<u>Appendix D</u>; only the beginning and ends of each list have been filed to avoid unnecessary bulk).

**B.    Rule 23(a)(2) – Commonality; and  Rule 23(b)(3) – Common Questions of Law or Fact Predominate**

Fed.R.Civ.P. 23(a)(2) requires that there be a common question of law <u>or</u> fact.  Rule

23(b)(3) requires that the questions of law or fact common to all members of the class predominate over questions pertaining to individual members.

    These requirements are normally satisfied when there is an essential common factual link between all class members and the defendant for which the law provides a remedy.  Halverson v. Convenient Food Mart, Inc., 69 F.R.D. 331 (N.D. Ill. 1974).  Where a question of law involves "standardized conduct of the defendants toward members of the proposed class, a common nucleus of operative facts is typically presented, and the commonality requirement ... is usually met."  Franklin v. City of Chicago, 102 F.R.D. 944, 949 (N.D. Ill. 1984); Patrykus v. Gomilla, 121 F.R.D. 357, 361 (N.D. Ill. 1988).  The authorities hold that cases dealing with the legality of standardized conduct are generally appropriate for resolution by means of a class action because the document or conduct is the focal point of the analysis.  Halverson, 69 F.R.D. 331; Haroco v. American Nat'l Bank, 121 F.R.D. 664, 669 (N.D. Ill. 1988) (improper computation of interest); Kleiner v. First Nat'l Bank, 97 F.R.D. 683 (N.D. Ga. 1983) (same); Heastie, 125 F.R.D. 669 (execution of home improvement financing documents in sequence that evaded consumers' rescission rights).  This is true even though the nature and amount of damages may differ among the members of the class. Id.

    In this case, the "common nucleus of operative fact," Halverson, 69 F.R.D. at  335, is that defendant filed falsified and fraudulent documents in collection lawsuits brought to collect purported debts which defendant claims to have purchased.  The dispositive issue – indeed, the only issue – is whether this practice violates the FDCPA.

    The only individual issue is the identification of the consumers from whom defendant attempted to collect as court costs sums which are not collectible as such, which should be readily ascertainable from defendant's files.  Readily answered questions of this nature do not present an obstacle to class certification.  Heastie v. Community Bank, 125 F.R.D. 669 (N.D. Ill. 1989) (court found that common issues predominated where individual questions of injury and damages could be determined by "merely comparing the contract between the consumer and the contractor with the

contract between the consumer and Community Bank"); <u>Wilkinson v. F.B.I.</u>, 99 F.R.D. 148, 157 (C.D. Cal. 1983) ("a need for individual proof of damages would not preclude class certification. 'The amount of damages is invariably an individual question and does not defeat class treatment.'"); <u>Franklin</u>, 102 F.R.D. at 949 (similar).

The Seventh Circuit has held that the need for "separate proceedings of some character ... to determine the entitlements of the individual class members to relief" should "not defeat class treatment of the question whether defendants violated [the law]." <u>Carnegie v. Household Int'l, Inc.</u>, 376 F.3d 656, 661 (7th Cir. 2004). "Once that question is answered, if it is answered in favor of the class, a global settlement ... will be a natural and appropriate sequel. And if there is no settlement, that won't be the end of the world. Rule 23 allows district courts to devise imaginative solutions to problems created by the presence in a class action litigation of individual damages issues. Those solutions include (1) bifurcating liability and damage trials with the same or different juries; (2) appointing a magistrate judge or special master to preside over individual damages proceedings; (3) decertifying the class after the liability trial and providing notice to class member concerning how they may proceed to prove damages; (4) creating subclasses; or (5) altering or amending the class." <u>Id.</u>

C.    **Rule 23(a)(3) – Typicality**

The rule requires that the claims of the named plaintiff be typical of the claims of the class:

> **A plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory. The typicality requirement may be satisfied even if there are factual distinctions between the claims of the named plaintiffs and those of other class members. Thus, similarity of legal theory may control even in the face of differences of fact.**

<u>De La Fuente v. Stokely-Van Camp, Inc.</u>, 713 F.2d 225, 232 (7th Cir. 1983) (citation omitted).

In the instant case, typicality is inherent in the class definition. By definition, each of the class members has been subjected to the same practice as the named plaintiff.

D.      **Rule 23(a)(4) – Adequacy of Representation**

The rule also requires that the named plaintiff provide fair and adequate protection for the interests of the class. That protection involves two factors: (a) the plaintiff's attorney must be qualified, experienced, and generally able to conduct the proposed litigation; and (b) the plaintiff must not have interests antagonistic to those of the class. <u>Rosario v. Livaditis</u>, 963 F.2d 1013, 1018 (7th Cir. 1992); <u>accord</u>, <u>Wetzel v. Liberty Mutual Ins. Co.</u>, 508 F.2d 239, 247 (3d Cir. 1975); <u>In re Alcoholic Beverages Litigation</u>, 95 F.R.D. 321.

Plaintiff understands the obligations of a class representative, and has retained experienced counsel, as is indicated by <u>Appendix D</u>, which sets forth counsel's qualifications.

The second relevant consideration under Rule 23(a)(4) is whether the interests of the named plaintiff are coincident with the general interests of the class. Here, plaintiff and the class members seek money damages as the result of defendant's unlawful collection demands. Given the identity of claims between plaintiff and the class members, there is no potential for conflicting interests in this action. There is no antagonism between the interests of the named plaintiff and those of the classes.

E.      **Rule 23(b)(3) – Class Action Is Superior to Other Available Methods of Resolving This Controversy.**

Efficiency is the primary focus in determining whether the class action is the superior method for resolving the controversy presented. <u>Eovaldi v. First Nat'l Bank</u>, 57 F.R.D. 545 (N.D. Ill. 1972). The Court is required to determine the best available method for resolving the controversy in keeping with judicial integrity, convenience, and economy. <u>Scholes</u>, 143 F.R.D. at 189; <u>Hurwitz v. R.B. Jones Corp.</u>, 76 F.R.D. 149 (W.D. Mo. 1977). It is proper for a court, in deciding the "best" available method, to consider the "... inability of the poor or uninformed to enforce their rights, and the improbability that large numbers of class members would possess the initiative to litigate individually." <u>Haynes v. Logan Furniture Mart, Inc.</u>, 503 F.2d 1161, 1165 (7th Cir. 1974).

In this case there is no better method available for the adjudication of the claims

11

which might be brought by each individual debtor.  The vast majority of debtors are undoubtedly

unaware that their rights are being violated.

  The fact that there are large numbers of class members "is no argument at all" against

certification.  <u>Carnegie v. Household Int'l, Inc.</u>, <u>supra</u>, 376 F.3d 656, 660-61 (7th Cir. 2004).  "The

more claimants there are, the more likely a class action is to yield substantial economies in litigation.

It would hardly be an improvement to have in lieu of this single class action 17 million suits each

seeking damages of $15 to $30.... The realistic alternative to a class action is not 17 million

individual suits, but zero individual suits, as only a lunatic or a fanatic sues for $30.  But a class

action has to be unwieldy indeed before it can be pronounced an inferior alternative – no matter how

massive the fraud or other wrongdoing that will go unpunished if class treatment is denied – to no

litigation at all."  <u>Id.</u>

  The special efficacy of the consumer class action has been noted by the courts and

is applicable to this case:

> **A class action permits a large group of claimants to have their claims adjudicated in a single lawsuit.  This is particularly important where, as here, a large number of small and medium sized claimants may be involved.  In light of the awesome costs of discovery and trial, many of them would not be able to secure relief if class certification were denied . . . .**

<u>In re Folding Carton Antitrust Litigation</u>, 75 F.R.D. 727, 732 (N.D. Ill. 1977) (citations omitted).

Another court noted:

> **Given the relatively small amount recoverable by each potential litigant, it is unlikely that, absent the class action mechanism, any one individual would pursue his claim, or even be able to retain an attorney willing to bring the action.  As Professors Wright, Miller and Kane have discussed, in analyzing consumer protection class actions such as the instant one, 'typically the individual claims are for small amounts, which means that the injured parties would not be able to bear the significant litigation expenses involved in suing a large corporation on an individual basis.  These financial barriers may be overcome by permitting the suit to be brought by one or more consumers on behalf of others who are similarly situated.'  7B Wright et al., §1778, at 59; see e.g., <u>Phillips Petroleum Co. v. Shutts</u>, 472 U.S. 797, 809 (1985) ('Class actions . . . may permit the plaintiff to pool claims which would be uneconomical to litigate individually.')  The public interest in seeing that the rights of consumers are vindicated favors the disposition of the instant claims in a class action form.**

<u>Lake v. First Nationwide Bank</u>, 156 F.R.D. 615, 628-629 (E.D. Pa 1994).

Class certification will provide an efficient and appropriate resolution of the controversy. <u>Zanni</u>, 119 F.R.D. 32.

## V.    CONCLUSION

The proposed class meets the requirements of Rules 23(a) and (b)(3).  Plaintiff respectfully requests that this Court certify this action as a class action.


Respectfully submitted,

s/ Daniel A. Edelman
Daniel A. Edelman


Daniel A. Edelman
Cathleen M. Combs
James O. Latturner
Cassandra P. Miller
EDELMAN, COMBS, LATTURNER & GOODWIN, LLC
120 S. LaSalle Street, Suite 1800
Chicago, Illinois  60603
(312) 739-4200
(312) 419-0379 (FAX)

## CERTIFICATE OF SERVICE

       I, Daniel A. Edelman, hereby certify that on June 25, 2008, the foregoing document was filed electronically using the Court's CM/ECF system.  A copy of the foregoing document was served on the following party via hand delivery:

RESURGENCE FINANCIAL, LLC
c/o Nathan M. Grossman, Registered Agent
20 S. Clark Street, Suite 1650
Chicago, IL 60603

       I further certify that on the same date, a copy of the foregoing was also served on the following party via U.S. Mail:

Todd Lansky
Resurgence Financial, LLC
4100 Commercial Avenue
Northbrook, IL  60062

                                 s/ Daniel A. Edelman
                                 Daniel A. Edelman

Daniel A. Edelman
Cathleen M. Combs
James O. Latturner
Cassandra P. Miller
EDELMAN, COMBS, LATTURNER & GOODWIN, LLC
120 S. LaSalle Street, Suite 1800
Chicago, Illinois  60603
(312) 739-4200
(312) 419-0379 (FAX)